**UNITED STATES of America,**
**Plaintiff,**

v.

**Owen LATTIMORE, Defendant.**
**Cr. No. 1016.**

United States District Court,
District of Columbia.
Jan. 18, 1955.

See also, D.C., 125 F.Supp. 295.

Leo A. Rover, John W. Jackson, George J. Donegan and Edward F. Hummer, Washington, D. C., for plaintiff.

Joseph C. O'Mahoney, Thurman Arnold, Abe Fortas, Paul A. Porter, William D. Rogers, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

Owen Lattimore was indicted October 7, 1954, on two counts of perjury allegedly committed before the Senate Internal Security Subcommittee on or about February 27, 1952.[1]

The first count charges that Lattimore perjured himself when he denied that he was a "follower of the Communist line."[2] It avers that in his positions and policies as to political, diplomatic, military, economic and social matters, there can be found expressed in his statements and writings from 1935 to 1950, several hundred instances in which he followed the Communist line, meaning that he:

"* * * followed in time, conformed to, complied with and paralleled the positions taken, the policies expressed and propaganda issued on the same matters by the Government of the Soviet Union, the Communist Party of the Soviet Union, the Comintern and its successors, the various Communist governments, parties and persons adhering to Communism and accepting the leadership of the Soviet Communist Party." (Count I, paragraph 5).

The second count charges that Lattimore perjured himself when he testified he had never been a "promoter of Communist interests."[3] Such a person is defined as one who:

---

1. Lattimore was indicted previously, December 16, 1952, on seven counts of perjury. Criminal No. 1879-52. Four of the counts were dismissed by this Court. United States v. Lattimore, D.C.D.C. 1953, 112 F.Supp. 507. Two of the dismissed counts were reinstated on appeal. United States v. Lattimore, D.C.Cir., 1954, 215 F.2d 847, 521. The dismissal of Count I, which charged that Lattimore perjured himself in denying before a Senate Subcommittee that he had ever "been a sympathizer or any other kind of promoter of Communism or Communist interests * * *", was upheld on appeal on the ground that it violated the Sixth Amendment to the Constitution in failing to disclose, with sufficient clarity, the substance of the offense charged.

The prevailing counts under the old indictment and the new indictment, Criminal No. 1016-54, have been consolidated for trial.

In this new indictment the Government relies upon essentially the same testimony that defendant gave before the Senate Subcommittee, which formed the basis of the previous indictment. The word "promoter" is found in Count II of the new indictment. The Court of Appeals did not pass upon the specificity of this word. United States v. Lattimore, supra, 215 F.2d at pages 849–850. Judge Prettyman stated:

"The Government says that since 'promoter' is a term of certainty the count is valid, even though 'sympathizer' is invalidly vague. But that position is not tenable. Even if 'promoter' were a perfectly certain term (which we do not decide), the presence of the uncertain word is sufficient to destroy the count."

2. Twenty-five topics wherein defendant allegedly followed the line are listed along with citations to news releases, commentaries, and general statements made by defendant upon which the Government relies to support its charge.

3. It is alleged that during the period 1935 to 1950, through his correspondence and his widely disseminated writings, Lattimore furthered Communist interests while holding such positions as editor of the Institute of Pacific Relations' publication "Pacific Affairs"; as employee of the National Government of China; as a United States Government official, among others. This is said to have been done in regard to the twenty-five enumerated topics with the accompanying specifications as to the sources of defendant's statements cited in Count I.

Two other paragraphs refer to, and rely upon, the definition of Communist line found in Count I.

The remaining paragraphs stand by themselves as examples of how defendant promoted Communist interests.

"* * * knowingly and intentionally contributed to the growth, enlargement and prosperity of Communism by acting to further, encourage and advance those objectives of political, diplomatic, military, economic and social interest to the Government of the Soviet Union, the Communist party of the Soviet Union, the Comintern and its successors, the various Communist governments, parties and persons adhering to Communism and accepting the leadership of the Soviet Communist party." (Count II, paragraph 5).

Defendant moved to dismiss the indictment,[4] alleging that each of the two counts violate both the First and Sixth Amendments to the United States Constitution. The Court's holding that both counts should be dismissed on the ground of vagueness renders unnecessary a determination of their constitutionality under the First Amendment.

However, when the charge in an indictment is in the area of the First Amendment, evidencing possible conflict with its guarantees of free thought, belief and expression, and when such indictment is challenged as being vague and indefinite, the Court will uphold it only after subjecting its legal sufficiency to exacting scrutiny.[5]

When passing upon the Motion to Dismiss, "* * * the allegations of the indictment must be accepted as they are written."[6] This we do,[7] and are of

4. Defendant filed as preliminary motions, a Motion to Dismiss the Indictment, and a Motion for a Bill of Particulars. Supplementing his Motion to Dismiss, the defendant filed three extensive appendices:

Appendix I: Outline of Major Developments During the Period Covered by the Excerpts (1935–1950) and the Controversies Over International Affairs During This Period.

Appendix II: Lattimore's Writings Cited in Support of the Charge That He "Followed the Communist Line."

Appendix III: Some Excerpts from Lattimore's Writings Showing His Opposition to the Expansion of Russian Power and the Spread of Communist Influence.

The Government filed an Opposition to the Motion to Dismiss, a Motion to Strike and an Opposition to the Motion for a Bill of Particulars. Through its Motion to Strike, the Government seeks to have stricken parts of defendant's main Motion to Dismiss and the three appendices which are attached to it, as challenging the truthfulness of the allegations in the charges rather than admitting all the facts well pleaded and challenging only their legal sufficiency under Rule 12, Federal Rules of Criminal Procedure, 18 U.S.C.A. The Court, in disposing of the Motion to Dismiss, has not considered any of the material in the Appendices, or gone beyond the face of the indictment, so this Motion to Strike becomes moot.

A Motion for a Bill of Particulars relating to the two counts of the prior indictment, which were reinstated on appeal, has been granted in certain respects by separate order (see footnote 1).

In view of the dismissal of the present indictment, defendant's alternative Motion for a Bill of Particulars becomes moot.

5. Rumely v. United States, 1952, 90 U.S. App.D.C. 382, 197 F.2d 166, affirmed 1953, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770.

6. United States v. Lattimore, D.C.Cir., 1954, 215 F.2d 852.

7. The Government, understandably, has some difficulty with the proposition due to the expansive nature of the indictment. On the one hand we are told that we have no right to take judicial notice of Lattimore's writings, though they may have been picked out of context for the indictment, nor of the "Communist line"; while on the other hand we are told we can take judicial notice of the evils of Communism and of its plan and strategy. The Government even argues as to what this is (see Official Transcript of proceedings—hereafter referred to as "Transcript"—Criminal Nos. 1879–52 and 1016–54, U. S. v. Owen Lattimore, December 13, 1954, pp. 93–96).

The Court has passed on the indictment without going beyond it, even for explanatory material. However, the proposition that certain excerpts from the writings of an accused may be taken out of context and historical setting to form an indictment, while the accused is prohibited from placing them in proper context on a Motion to Dismiss, rings

the opinion that it does not, as a matter of law, inform the accused of the nature and cause of the accusation against him. Neither does it charge an offense with reasonable clarity so that the accused can make his defense, nor furnish the accused with such a description of the charge that he would be able to avail himself of his conviction or acquittal for protection against a further prosecution for the same cause.

In upholding the dismissal of the first count in the prior indictment Judge Prettyman, speaking for the Court of Appeals, aptly stated,

> "Not only is it a basic rule that 'Criminal statutes must have an ascertainable standard of guilt or they fall for vagueness', but it is equally well established that an indictment must charge an offense with such reasonable certainty that the accused can make his defense. The cases on the point are myriad, as reference to any authority quickly reveals." [8]

Testing the two counts against this principle, the Court is satisfied that they fail to meet the prescribed standard of definiteness and so must fall for vagueness.

■ Perjury, as presently charged to defendant under 18 U.S.C. § 1621, occurs when a person under oath " * * * willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true * * * ".[9] The substance of such crime is a defendant's lack of belief in the truth of his testimony as of the moment he made it. For a jury to conclude that perjury has been committed, in fact, it must determine what the words meant to the defendant at the time he offered them as his testimony, and then conclude that the defendant did not at that time believe in the truth of such testimony according to the meaning he ascribed to the words and phrases he used.[10]

Under Count I, perjury is charged to the statement by Lattimore that he was not a follower of the Communist line. The Government supplies a definition of this phrase in the indictment. The Government is prompt to concede that no such definition was presented to the defendant at the Committee hearing in 1952; that it was formulated after Lattimore testified; that it was prepared after independent research conducted by the United States Attorney's Office.[11] The sources of such research, however, do not appear. The Government contends that it is a matter of common knowledge as to what is meant by "follower of the Communist line" and that people differ but little in their understanding of the term;[12] that it is not a minimal requirement of following the Communist line to zig and zag with it,[13] since it does not always zigzag;[14] and

---

untrue to our traditional American concept of fair play.

8. United States v. Lattimore, supra, 215 F.2d at page 849.

9. Defendant was originally indicted in Criminal No. 1879–52 under the D. C. Perjury Statute, D.C.Code, T. 22, Sec. 2501 (1951) (see footnote 1).

10. It does not make any difference whether the statements were in fact true or not—the defendant's belief as to their truth or falsity is the issue.

11. Transcript, pp. 59–60.

12. Common knowledge of whom? The man on the street? A newspaper man? A man of ordinary or of superior intellect? A member of the F. B. I.? The Department of Justice? The Internal Security Subcommittee? The State Department?

13. See Transcript, pp. 61, 63.

14. The Government's position confuses the Court. In its "Supplemental Memorandum in Opposition to Motion to Dismiss", p. 7, there is found the following:

> "It defies common sense to argue that the only test of recognizing a dog is a wagging tail and similarly that the only test of a follower of the Communist line is one who zigs or zags. True, a dog should have a tail and a follower should zig and zag, but as the Government has stated to the Court, it will be proven the defendant has zigged and zagged. As the bulk of a dog is not his tail, neither is the bulk of the line zigging and zagging;

that the Communist line means the Soviet Communist line and all other organizations that followed the Soviet line.[15] The Government claims a right to prove, by men who are familiar with the common usage of the phrase and by documents of defendant's, that the definition found in the indictment was the same definition which Lattimore had in mind when he testified;[16] that the jury should be left to determine what is the Communist line,[17] what it means to follow such a line, what Lattimore understood as the Communist line, what Lattimore meant by the word "follow", and lastly, having decided the above, that Lattimore, when he said he was not a follower of the Communist line, did not at that time believe in the truth of such testimony according to the meaning he ascribed to these words.[18]

 While the proper test of perjury is subjective, insofar as it is based upon the understanding of the witness himself regarding the words that he used, a criminal prosecution must have certain objective standards.[19] Most often in perjury cases the objective standard is not hard to come by; what the accused considered his statements to mean is not in issue since the words or phrases involved have one clear, accepted and recognized meaning. Here, the phrase "follower of the Communist line" is subject to varying interpretations. It has no universally accepted definition. The Government has defined it in one way and seeks to impute its definition to the defendant. Defendant has declined to adopt it, offering a definition of his own. It would not necessitate great ingenuity to think up definitions differing from those offered either by the Government or defendant. By groundless surmise only could the jury determine which definition defendant had in mind.

overwhelmingly its positions remain fixed from their inception."

The Government appears to be zigging and zagging as to its position and meaning of the indictment terms. Even with the definition provided, how is defendant to come to his defense when a minimal requirement of the basic element of a count is so elusive?

15. See Transcript, p. 63.

16. See Transcript, p. 66.

17. See Transcript, pp. 66, 67.

18. The Government must predicate this argument upon the notion that jurors, being of ordinary intelligence, are being asked to make allowances only for the normal disparity in the intellect of men in determining what defendant had in mind when he denied being a follower of the Communist line or a promoter of Communist interests. It is a false notion because they are being asked to make greater allowances than this. The meaning of the phrases involved has varied markedly from decade to decade. For example, certain acts were performed and certain statements were made in support of the Soviets by many people in this country before, during, and after the United States-Russian alliance of World War II. Today, in retrospect, many political analysts decry such support as having been extreme. Many do not. But

no jury is entitled to determine what degree of support was or was not bona fide as the basis for a perjury conviction.

In this lies the falsity of the Government position: the jury is not only being asked to make allowances for the normal disparity in intellect of the defendant in determining what the words he used meant to him, but is also being asked to make allowances for justifiable and non-justifiable political statements, with the justification necessarily based upon the currently popular political views of the jury. The possibility of wrongful conviction founded upon subjectively tolerated degrees of political thought is too severe to ignore.

19. The indictment's definition and the listing of topics and sources of defendant's statements are an evident attempt by the Government to meet the objections indicated by Judge Prettyman in United States v. Lattimore, supra, 215 F.2d at page 849, where the question was posed as to whether the word "sympathizer" was of sufficiently certain meaning to sustain a charge of perjury. The Court found that it was not, but said:

"* * * There is no definition of the term 'sympathizer' or any concrete specification of its content either in the indictment or in the statute. Without such definition or specification the term has no certain meaning."

■ The Court cannot escape the conclusion that "follower of the Communist line" is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.[20] This count, even with its apparent definition, is an open invitation to the jury to substitute, by conjecture, their understanding of the phrase for that of the defendant. The meaning of such a phrase varies according to a particular individual's political philosophy. To ask twelve jurors to agree and then decide that the definition of the Communist line found in the indictment is the definition that defendant had in mind and denied believing in, is to ask the jury to aspire to levels of insight to which the ordinary person is incapable, and upon which speculation no criminal indictment should hinge.[21] We cannot debase the principle that:

"The accused is entitled under the Constitution to be advised as to every element in respect to which it is necessary for him to prepare a defense."[22]

■ When elements in an indictment are so easily subject to divergent interpretation, the accused is not adequately apprised of the charges as to enable him to prepare a defense.[23] It therefore fails

20. In United States v. Lattimore, supra, 215 F.2d at page 853, Judge Prettyman stated that the word "Communist" was a word with a meaning which could be used with mutual understanding by a questioner and an answerer. But the Court stated:
"* * * the word 'Communist' may be used with different shades, gradations or variations of meaning, but all such are within a clearly established generic meaning."
Although Lattimore's testimony was voluntarily given, the same principle is applicable, and to our way of thinking, the phrase "follower of the Communist line" differs from the word "Communist" in that it has all shades, gradations, and variations of generic meaning.

21. The Government relies heavily upon Seymour v. United States, 8 Cir., 1935, 77 F.2d 577, 99 A.L.R. 880, where the issue of a defendant's understanding of the words he used was directly passed upon. Seymour had been found guilty of perjury by a jury for having denied before a Special Committee of the United States Senate that he had encouraged the candidacy of a third party for Republican nomination to the United States Senate during the Nebraska primaries. On appeal, defendant tried to demonstrate that he had meant "encourage" in a way which would invalidate the perjury conviction. The court upheld the conviction and declared that the understanding by defendant of the words he used was a jury question which had been properly decided.
This teaches only that the court cannot accept as conclusive the meaning which defendant ascribes to the words he used when he testified. It is a common sense decision bottomed upon the understanding that if it were otherwise, anyone accused of perjury would assert his understanding of the words used in a way so as to preclude any possibility of conviction.
The Seymour case involved perjury allegations based upon and requiring findings of discernible and specific facts and so is clearly distinguishable from the present case wherein perjury is based upon, and requires as a minimum, content analysis of the conglomeration of the writings of a man over a fifteen-year period covering twenty-five broad topics as well as the major policy positions of many nations over an equal period of time.

22. United States v. Lattimore, supra, 215 F.2d at page 850.

23. Consider, for example, how is Lattimore to ascertain what were the positions and policies of all the Communist countries and all Communist individuals who expressed them over a period of fifteen years, and whether they were promulgated by the Soviet Communist government and so were "line". How is Lattimore in preparing his defense, to know whether the articulated policies were just decoys or whether they were part of "official" line? What is Lattimore to look for in preparing his defense? Should it be coincidental agreement with Russian policy at any time? Even during the period of the World War II alliance between the United States and Russia? Should he be forced to decide what is the formal historical line and then respond accordingly? Also what does "Communist line" mean respecting Russian domestic

to conform to the requirements of the Sixth Amendment and Federal Rules.[24] It cannot be cured by a bill of particulars.[25]

The second count charges that Lattimore prejured himself when he testified he had never been a "promoter of Communist interest." [26]

Defendant contends, in essence, that this count is an identical twin of Count I, differing only in the prose in which the Government has dressed it; that it really means the same thing as "follower of the Communist line", i. e., defendant allegedly followed the Communist line in that he wrote certain articles, and he promoted the Communist interests in that he followed the Communist line in these articles; [27] that while the word "promoter" might be definite enough in an indictment when tied to certain specific acts, it has been rendered formless and indefinite by the very definition and listing of topics which the Government has attached to it, i. e., he encouraged and advanced the political, economic, military, diplomatic, and social policy of the Soviet Union, China, and any other Communist country, in certain situations.[28]

The Government contends that the phrase is sufficiently clear by reason of its specification of content and definition; that Count II is in no way dependent upon Count I other than in its reliance upon it for purposes of definition and topical content.[29]

This entire perjury indictment arises out of, and is essentially founded upon, the statements, correspondence, and editorial comments of defendant. It does not rest upon alleged acts of espionage or such an act as membership in the Communist party. The Government pointed to the activities of an espionage agent as an example of how one might knowingly promote Communist interests without also being a knowing follower of the Communist line—whatever that may be. But the Government was quick to state that it was not charging defendant with being an espionage agent.[30] It should be kept in mind that under this count only written comments and opinions are involved and are said to have produced a certain effect, namely, to have promoted Communist interests. Such writings and comments are not alleged to have produced the designated result over a short period of time, and in isolated instances, but over a fifteen-year period. By no stretch of the imagination can we comprehend how this consistent result (promoting Communist interests)

policy as opposed to its foreign policy? How is defendant supposed to decide this? What if he makes a wrong decision, based upon diligent research, in the preparation of his defense and is unprepared to meet an unanticipated approach used by the Government at trial?

24. The Sixth Amendment provides:
"In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation * * *."
Rule 7(c), Federal Rules of Criminal Procedure provides:
"The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

25. We believe the language of Judge Prettyman with reference to Count I in the previous indictment is pertinent here:
"We think the vagueness * * * cannot be cured by a bill of particulars.

Details in support of a valid count can be supplied by a bill of particulars, but a count which is too vague to be valid cannot be made valid by such a bill. The prosecutor, in supplying the particulars, cannot guess at what was in the grand jury's mind or ascribe a meaning to a charge by the grand jury if that meaning is not apparent upon the face of the indictment." United States v. Lattimore, supra, 215 F.2d at page 850.

26. This phrase is defined in the indictment. As in Count I, no definition was presented to defendant at the Committee hearing in 1952. It was prepared after Lattimore testified, on the basis of independent research of the United States Attorney's Office.

27. Transcript, pp. 26, 27.

28. Transcript, pp. 26–28.

29. Transcript, pp. 87–93.

30. Transcript, p. 88.

could have been so attained had not the commentator been both aware of what the Communists were asserting during this extended period, and then knowingly adhered to these assertions (followed the Communist line). If defendant had contradicted the Communists' assertions, he could hardly be said to have promoted their interests.[31]

Count II, thus dependent upon Count I, cannot stand, being anchored to, partaking of, and plagued by, all its vagueness and indefiniteness. While some paragraphs of Count II specifically refer to Count I, either for the definition of the Communist line or for topical references wherein defendant promoted Communist interests,[32] all of the paragraphs, realistically appraised, are rooted in, and presume a prior finding of, the meaning of the phrase "follower of the Communist line".

The charges here serve only to inform the defendant that his sworn statements are to be tested against all his writings for chance parallelism with, or indirect support of, Communism regardless of any deliberate intent on his part. They demonstrate that the Government seeks to establish that at some time, in some way, in some places, in all his vast writings, over a fifteen-year period, Lattimore agreed with something it calls and personally defines as following the Communist line and promoting Communist interests.

Jury inquiries would be limitless. No charge by the Court could embody objective standards to circumscribe and guide the jury in its determination of what the witness might have meant regarding words he used. With so sweeping an indictment with its many vague charges, and with the existing atmosphere of assumed and expected loathing for Communism, it would be neither surprising nor unreasonable were the jury subconsciously impelled to substitute its

---

31. The Government seems to recognize the difference between promoting Communist interests by physical acts themselves and doing this through studied writings. On pages 87–88 of the Transcript the following discussion occurred:

"The Court: How could he knowingly be a promoter of Communist interests without also knowingly being a follower of the Communist line?

"Mr. Rover: One thought that occurs to me is this, Your Honor—and please don't misunderstand me that I am calling Lattimore an espionage agent, because I am not. I think an espionage agent might promote Communist interests, say for a monetary remuneration, without being—

"The Court: Would he knowingly follow the Communist line by being an espionage agent?

"Mr. Rover: I suppose the effect of it would be, he would be following the Communist line. But as a matter of fact, he may not realize that he was knowingly and intentionally following the Communist line. He might be just an espionage agent, whereby he would be doing things, unlawful things to promote Communist interests, *without giving any particular thought at all to whether he was following the line or not.*" (Emphasis supplied.)

32. The listing of topics as to how and in what manner defendant made use of his positions to engage directly and indirectly through his opinions, to promote Communist interests, adds no precision but only greater formlessness to the indictment and asks for increased speculation by the jury. Consider, for example, such of the listed topics as "The Marxist System is Admired for Its Progress and Accomplishments", "The Soviet Union is Democratic", "The Soviets Fully Accord Equal Rights to All Minorities", "The Soviet Collective System Benefits the Individual", "The Soviet Society Being Most Progressive is Admired by Other Countries", "The Soviets Have Not Intervened in China".

The jury must consider what each of these topics means, and this includes all the terms contained therein; what the defendant understood as to each term and topic, and as to whether or not when defendant said he did not promote Communist interests he knowingly lied as to each of these topics according to the meaning of them he, at that moment, had in mind. How could a jury fathom without guesswork, the meaning of all of these topics, and specifically such phrases and words as "Marxist System", "Equal Rights", "Minorities", "Progressive", "Intervened"? (See also footnote No. 3).

own understanding for that of defendant.

To require defendant to go to trial for perjury under charges so formless and obscure as those before the Court would be unprecedented and would make a sham of the Sixth Amendment and the Federal Rule requiring specificity of charges.

The indictment will therefore be dismissed.