**UNITED STATES of America,**
**Appellant,**

v.

**John S. LAROCCA.**

**No. 12084.**

United States Court of Appeals
Third Circuit.

Argued April 15, 1957.
Decided May 13, 1957.

Thomas J. Shannon, Asst. U. S. Atty., Pittsburgh, Pa. (D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., on the brief), for appellant.

Vincent M. Casey, Pittsburgh, Pa. (Margiotti & Casey, V. J. Rich, Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal by the government from an order dismissing an indictment on motion before trial. The indictment was drawn in two counts. The first charged perjury in testimony at a deportation hearing in violation of Section 1621 of Title 18, U.S. Code, and the second, the filing of a false statement in a deportation proceeding with intent to influence its outcome in violation of Section 1001 of Title 18, U.S. Code.

The circumstances upon which the dismissal was predicated were those disclosed by the allegations of the indictment itself and by the uncontroverted record of certain deportation proceedings. It appeared that in 1953 deportation proceedings were instituted against appellee Larocca, an alien, because he had been convicted of certain crimes since his entry into this country. Larocca then asked for administrative suspension of deportation under Section 1254(a) (1) of Title 8 U.S. Code, which places the granting of such relief within administrative discretion if the alien shows that his moral character has been good during a continuous stay of seven years or more in this country. It was at the hearing before a special inquiry officer on the issues thus raised that the alleged perjury occurred.

The perjury count charges that there came a time during this administrative

hearing when Larocca, testifying under oath, had his attention directed to the fact that on February 19, 1948 detectives raided the "Duquesne Vending Company, 324 West Grant Avenue, Duquesne, Pennsylvania", and seized a number of slot machines. Then Larocca's own counsel asked him questions and he answered as follows:

"Q. Did you have anything to do with this business? A. No, sir.

"Q. Is this part of your business? A. No, sir."

The second count, charging a false statement to influence an official proceeding, was based upon an alleged willful misstatement of fact in a formal petition for reopening of the deportation hearing submitted by Larocca about a month after the hearing had closed. The petition contained a categorical assertion that in January, 1948, the assets of the Duquesne Vending Company were sold to Arthur Milligan, and that Larocca thereupon ceased to be a partner in the enterprise.

The indictment charges that Larocca's denial at the deportation hearings, as alleged in the first count, and his affirmative statement, as set out in the second count, were willfully false in that he well knew that at the time of the February, 1948, raid he was still a partner in Duquesne Vending Company. It is further alleged that this relationship was material to the question of moral character during this period which he himself had put in issue.

Additional circumstances were considered by the court in connection with the perjury count. Although the special inquiry officer was authorized to administer oaths and had placed Larocca under oath as a witness, there was some colloquy during the hearing recognizing and making allowance for the possible inaccuracy of certain testimony. Specifically, in answer to a question put by the examining officer shortly after the questions and answers upon which the present perjury charge is predicated, Larocca said: "I am just telling you what happened. These people probably did not have the money. I am *not* swearing to it. * * *" At another point on the proceeding day, there had been discussion between the examiner and Larocca's counsel about possible inaccuracy in a net worth statement being submitted by the alien. At this point the examining officer said:

"* * * nor would I hold him responsible for lying under oath if his assets would vary substantially on this application from what they actually are."

The foregoing matters considered, the district court dismissed the indictment, stating in its order four grounds upon which the dismissal was predicated:

"1. The testimony of the defendant and the statement submitted by him, as set forth in the indictment are sufficiently consistent with the holding of a partnership interest in the Duquesne Vending Company as to be vague at most, and not clearly false;

"2. The defendant's mere holding of such partnership interest in and of itself is not of such weight in deportation proceedings where 'good moral character' is the issue as to meet the requirement of materiality;

"3. The context of the record of proceedings before the Special Inquiry Officer referred to in the indictment discloses that the testimony and statement of the defendant did not have a tendency to and in fact could not and did not influence the decision of the Special Inquiry Officer; and

"4. As disclosed by the record referred to in the indictment the Special Inquiry Officer knew that the defendant did not intend to be bound by his oath in the matter about which the alleged false testimony was given."

We will consider these stated grounds of decision separately.

■ On the face of the record we see nothing vague or equivocal in the denial by the witness that he had "anything to do with this business" or that it was "part of your [his] business." The enterprise in question had been identified with particularity. A specific time of possible association—February 19, 1948, when the business was raided— had been specified. The denial of association with the business at that time was in the most comprehensive terms. On their face both questions and answers were clear and unambiguous. If anything said was intended or understood in a way different from the normal connotation of the words used, this is a matter for the defense to prove on the general issue at trial.

■ There is not even a colorable argument of vagueness under the second count. The allegedly false statement of dissociation from the Duquesne Vending Company in January, 1948, is categorical and explicit.

■ As a separate point, the district court reasoned that the mere holding of a partnership interest in the Duquesne Vending Company would have been of so little probative value on the issue of good moral character that misrepresentation as to this relationship was not consequential enough to afford a proper basis for a charge of perjury. However, under this indictment the government has undertaken to prove at trial that the Duquesne Vending Company was engaged in illegal traffic in coin operated machines. The government also asserts that it was material to the issue of Larocca's good character to determine whether he was a partner in that business with guilty knowledge of what was being done under his proprietorship. Avoiding any anticipation of what may or may not be established at trial, we state merely that an administrative officer with discretionary power to grant relief to an individual upon a showing of his good moral character, would certainly be entitled to give weight to any showing that the individual was engaging in illegal traffic in slot machines. Cf.

United States ex rel. Kaloudis v. Shaughnessy, 2 Cir. 1950, 180 F.2d 489. Of course, the individual might prove that he was not a partner or that he was unaware of the illegal aspect of the business. But here again is an issue for trial which cannot be resolved at this stage of the prosecution.

■■ The third argument seems to be predicated on the fact that the deportation record shows affirmatively that the entire proceeding was dropped some time after the hearing upon which this indictment is based for a reason unconnected with the issue to which the alleged misrepresentations related. Specifically, a pardon was issued to Larocca clearing his record of criminal conviction with the result that he was no longer legally deportable. But the materiality of the allegedly false statements is to be determined in the light of the circumstances which existed when the statements were made. And this court has long since pointed out that it is sufficient that the false statement relates to a matter "that is legally capable of being proved in the cause" and serves to "legally evidence the propositions to be proved." United States v. Slutzky, 3 Cir. 1935, 79 F.2d 504, 506. It is of no consequence that the subsequent course of events made it unnecessary to decide the contested issue to which the false statements were germane.

■ The final ground of decision below was that the examining officer "knew that the defendant did not intend to be bound by his oath in the matter about which the alleged false testimony was given." But the record of the deportation hearing which was before the district court did not require this conclusion, for it appeared that the defendant had been duly sworn for whatever testimony he might give in the proceeding in question. True, the record shows statements and colloquies about matters not now in controversy in which it was made clear that Larocca was not making a positive assertion of fact or that he was not expected to be able to make a precise or accurate state-

**200**

ment. However, it was error to treat this as a conclusive demonstration that either Larocca or the examiner understood that the oath of the witness did not apply to the statements now in question or that inaccuracies were permitted in these statements.

We have concluded that neither the reasons given by the district court nor any of the arguments advanced on this appeal justified the dismissal of the indictment. We intend no implication about the case as it may appear on trial after the presentation of evidence.

The judgment will be reversed and the cause remanded for such further proceedings on the indictment as may be appropriate.