**UNITED STATES of America, Plaintiff,**

v.

**Charles W. HILLIARD, David Hoover, Dean House, John Osorio and James G. Ryan, Defendants.**

**No. 77 Cr. 35 (WCC).**

United States District Court,
S. D. New York.

May 12, 1977.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for U. S.; Daniel R. Murdock, Patricia Anne Williams, Asst. U. S. Attys., New York City, of counsel.

McGuire & Lawler, New York City, for defendant Ryan; Robert J. McGuire, New York City, of counsel.

Charles A. Stillman, New York City, for defendant Osorio.

Kaplan & Katzberg, New York City, for defendant House; Robert F. Katzberg, New York City, of counsel.

CONNER, District Judge:

The miscellany of motions now before the Court addresses a two-count indictment

filed on January 17, 1977. Count One of the indictment charges that the present five defendants conspired, from October 1975 through December 1975, to deal in counterfeit United States Treasury Bills in violation of 18 U.S.C. § 371. Count Two charges that defendant Ryan committed perjury, in violation of 18 U.S.C. § 1623, during the course of his December 29, 1975 appearance before a grand jury then investigating suspected activities involving counterfeited Government securities.

According to the indictment's recital, the alleged conspiracy began with the October 1975 introduction of defendant Osorio to one Dr. Lurie, through the offices of defendant Ryan. Osorio and his co-defendants, the indictment alleges, thereafter entered into certain negotiations with Lurie, their immediate object to purchase, through Lurie, some six million dollars in counterfeited treasury bills, their ultimate goal to acquire, via such financing, control of a North Carolina insurance company.

### I.

Among the overt acts alleged in the indictment is a November 17, 1975 telephone discussion between Ryan and Lurie, a conversation that, unbeknown to Ryan, was tape-recorded by Lurie, with the tape's thereafter being delivered to the Government. It is the recording of that discussion, punctuated as it was by elliptical references to Lurie's past and contemplated contacts with Osorio, to "a six million dollar package," and to "paper cost[ing] about twenty points," that forms at once the basis for the perjury count against Ryan and the grounding of the latter's present challenge to that count.

Count Two, the subject of Ryan's motion to dismiss, rests upon the following portion of Ryan's testimony before the grand jury that ultimately returned the indictment at bar:

"Q. Now, the first time Mr. Lurie informed you in any way, shape or form that he was having business dealings with Mr. Osorio, was sometime after December 10; is that correct?

"A. Well, actually he has not informed me yet.

"Q. And in fact prior to that time, indeed subsequent to that time, this fellow Dr. Lurie never informed you of any dealings he was having whatsoever with Mr. Osorio; is that correct?

"A. That is correct."

In launching his attack upon Count Two, Ryan argues that its dismissal is required under the Second Circuit's ruling in *United States v. Jacobs*, 531 F.2d 87 (2d Cir.), *aff'd on reh.*, 547 F.2d 772 (2d Cir. 1976). In that case, a Strike Force Attorney had failed to advise the defendant at the outset of her grand jury testimony that she was a "target" of the grand jury's investigation. On the basis of that omission, dismissal of the perjury count arising from defendant's testimony was affirmed on appeal. The absence of a "target" warning, the Court of Appeals unhappily noted, signalled a departure by the Strike Force from long-standing usages of the United States Attorneys in this Circuit, under whose direction the former was obliged to operate during the inquest phase of its cases. On rehearing, the Second Circuit—although acknowledging that a "target" warning was not dictated by constitutional principle, see *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976)—nonetheless upheld its earlier disposition, which it characterized as a "one-time sanction," imposed under its supervisory powers, "to encourage uniformity of practice (whatever the practice might be) between the Strike Force and the United States Attorney in the same district." 547 F.2d at 773 (emphasis omitted).

Citing the recording of his November 17, 1975 conversation with Lurie as proof that he had become a target of the grand jury's inquiry prior to December 29, 1975, and maintaining that he was not advised of such status by the Strike Force attorney who examined him, Ryan urges that we take our instruction from *Jacobs* and impose a like sanction in the present case. It is enough to note, however, that such invitation is singularly misdirected.

It may be assumed, for argument's sake at least, that Ryan was indeed a subject of the grand jury's investigation when called to give his testimony and that the warnings offered him preliminarily[1] by the Strike Force attorney fell short of the generic "target" warning's mark. For the same purpose, it may be assumed as well that this Court is invested with the "supervisory powers" to which Ryan apparently credits it. One fact nonetheless remains to disclose the ill grace of Ryan's posture here: in December 1976, the Strike Force in this district was officially merged into the United States Attorney's Office. Hence, the avowed "didactic purpose" of the Second Circuit's ruling in *Jacobs, i. e.,* "to make the practice of the [Strike] Force conform to that of the United States Attorney in the same district," 547 F.2d at 775-76 (emphasis omitted), cannot sensibly be imported into the present context.

Ryan further contends that questions put to him, as recited in Count Two, were too ambiguous or vague to support the charge that his responses thereto were perjurious. This Court does not share Ryan's apparent certainty that the terms "business dealings" and "dealings" are so essentially imprecise that defendant's belief in the truth or falsity of his accused responses could not possibly be gauged by a jury. Compare *United States v. Lattimore,* 127 F.Supp. 405 (D.D.C.), *aff'd,* 98 U.S.App.D.C. 77, 232 F.2d 334 (1955). Rather, all but the most captious might agree that such terms are hardly "without a meaning which can be used with mutual understanding by a questioner and an answerer." *United States v. Lattimore,* 94 U.S.App.D.C. 268, 215 F.2d 847, 853 (1954).

In any event, " 'mere vagueness or ambiguity in the questions is not enough to establish a defense to perjury. Almost any question or answer can be interpreted in several ways when subjected to ingenious scrutiny after the fact'." *United States v.*

---

1. Defendant Ryan was greeted at the witness stand with the following cautionary observations:

"Q. Mr. Ryan, you have been asked to appear before this Grand Jury today to give evidence in an investigation which the Grand Jury is conducting in order to determine whether or not any persons may have violated Federal laws with regard to the prohibition of the counterfeiting of any Government securities or other obligations, and in particular $100,000 United States Treasury bills.

In that regard, let me inform you that the Grand Jury is not at this time prepared to tell anybody that they will not be indicted.

Therefore, let me inform you of your rights so that you will be able to judge whether or not you wish to answer any questions.

First, you have the right to counsel; do you understand that?
A. Yes.
Q. By counsel I mean an attorney of your own choosing. By the right to counsel I mean the right to confer with him before answering any questions, or submitting any documents; do you understand that?
A. Yes.
Q. If you cannot afford counsel, but wish counsel, the Court will appoint counsel for you; do you understand that?
A. Yes.
Q. Have you retained an attorney?
A. No.
Q. Do you wish to retain an attorney before proceeding?
A. No.

Q. In addition, let me inform you that anything you state, or anything you submit may be used against you in a court of law; do you understand that?
A. Yes.
Q. You need not, and you have the right to refuse to make any statements or make any submissions which may tend to incriminate you, or subject you to fine, penalty or forfeiture; do you understand that?
A. Yes.
Q. The person immediately to your left is a stenographic reporter. He is recording verbatim all words stated during the time that you were present in this room, and answering questions; do you understand that?
A. Yes.
Q. You are now under oath. Therefore, anything you do state, or you do submit, you state or submit under the pains and penalties of perjury, should you willfully and knowingly make a false statement or submission; do you understand that?
A. Yes.
Q. In addition to the extent that you willfully submit any false or misleading document, or willfully make any misleading statement, you might also be prosecuted for obstruction of justice; do you understand that?
A. Yes.
Q. Knowing your rights at this time, are you ready to proceed?
A. Yes."

*Chapin,* 169 U.S.App.D.C. 303, 515 F.2d 1274, 1279 (1975), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 387 (1976), *quoting United States v. Ceccerelli,* 350 F.Supp. 475, 478 (W.D.Pa.1972). Where words or phrases of common usage form the predicate of a perjury charge and are arguably susceptible of more than one construction, whether the former witness and his examiner had a shared understanding with respect to them is properly left an issue for trial. See *United States v. Corr,* 543 F.2d 1042 at 1049 (2d Cir. 1976); *United States v. Bonacorsa,* 528 F.2d 1218, 1221 (2d Cir.), *cert. denied,* 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976); *United States v. Chapin, supra,* 169 U.S.App.D.C. 303, 515 F.2d at 1279–80; *United States v. Marchisio,* 344 F.2d 653, 661–62 (2d Cir. 1965); *United States v. Larocca,* 245 F.2d 196, 199 (3d Cir. 1957).

The decisions cited by Ryan in proposed support of his position scarcely avail him here. Thus, in *United States v. Wall,* 371 F.2d 398 (6th Cir. 1967), the Sixth Circuit reversed a perjury conviction, where the underlying charge had been based upon a question that was ambiguous and "[t]here was no evidence [at trial] to show what the question meant to [defendant] when she answered it." 371 F.2d at 400. As for *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), there the Supreme Court ruled that 18 U.S.C. § 1621 did not support perjury prosecutions for answers unresponsive, but "literally truthful." The *Bronston* Court's observation that, "Precise questioning is imperative as a predicate for the offense of perjury," *id.* at 362, 93 S.Ct. at 602, was obviously intended, in that context, to suggest to prosecutors a ready cure for witnesses' evasions; it did not, as another court has observed, "establish an ironclad rule that a perjury prosecution under 18 U.S.C. * * * § 1623 fails if *prima facie* impeccable terminology or phraseology [has] not been used." *United States v. Slawik,* 408 F.Supp. 190, 205 (D.Del.1975). Neither, *Wall* nor *Bronston* buttresses Ryan's suggestion that the Government's possession of the November 17, 1975 recording and other tapes should

"in fairness" have straitened the prosecutor's examination to a "focus [upon] * * details of the recorded conversations." Ryan's Reply Brief at 8.

 Ryan's final argument, *i. e.,* that the testimony upon which Count Two is based was not material to the grand jury's investigation and is thus not within the comprehension of 18 U.S.C. § 1623, need not detain us long. It is true enough, as Ryan notes, that the question of materiality— "whether the false testimony ha[d] the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation," *United States v. Stone,* 429 F.2d 138, 140 (2d Cir. 1970)—is one of law and hence is to be resolved by the Court. *Id.; United States v. McFarland,* 371 F.2d 701, 703 n.3 (2d Cir. 1966), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1689, 18 L.Ed.2d 624 (1967); *Brooks v. United States,* 253 F.2d 362 (5th Cir.), *cert. denied,* 357 U.S. 927, 78 S.Ct. 1374, 22 L.Ed.2d 1372 (1958). It is no less true, however, that, where the perjury charged "as appears upon the face of the indictment" is "within the realm of materiality," whether the accused testimony was material to the grand jury's inquiry is a matter that must be deferred until the close of the Government's case. *United States v. Lattimore, supra,* 94 U.S.App.D.C. 268, 215 F.2d at 852; see *United States v. Mancuso,* 485 F.2d 275, 280–81 (2d Cir. 1973).

We can hardly conclude at this juncture that, had Ryan affirmed his receipt of information from Lurie respecting the latter's contacts with Osorio, the grand jury would not have consequently probed further, at least into the substance of that intelligence, and fruitfully so for the purposes of its underlying inquiry. Nor, for that matter, is there cause presently to assume, as Ryan apparently would have us do, that the three tape recordings of his conversations with Lurie—the tapes already in the grand jury's possession prior to Ryan's testimony—wholly satisfied, at least for Ryan's part, the grand jury's "need to know." Indeed, Ryan answers his own argument by stating that the conversations reduced to tape "were

very brief and extremely vague and were hardly such that anybody would remember them with more than passing recollection" and that they did "not begin to incriminate defendant in a conspiracy to purchase counterfeit securities," Ryan's Main Brief at 11. The latter propositions are, moreover, without apparent relevance to the present question of materiality.

Because this is not a case "where false statements charged are not even probably material," *United States v. Laut*, 17 F.R.D. 31, 36 (S.D.N.Y.1955), this final aspect of Ryan's motion is, at best, premature.

## II.

■ The first aspect of defendant Osorio's motion is his claim that the face of the indictment reflects a misjoinder, under Rule 8, F.R.Crim.P., requiring severance of Count One from Count Two. Although Rule 8(a) relates in terms to the joinder of offenses and Rule 8(b) to the joinder of defendants, "when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is made under 8(b) rather than 8(a)." *United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir. 1975); *United States v. Roselli*, 432 F.2d 879, 898 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); 1 Wright, Federal Practice and Procedure § 144 (1969). The joinder requirements of Rule 8(b) are satisfied only if the co-defendants are alleged to have "participated * * * in the same series of acts or transactions constituting an offense or offenses." In assessing the propriety of joinder under Rule 8(b), as well as under a kindred aspect of Rule 8(a),[2] "the predominant consideration is whether joinder would serve the goals of trial economy and convenience," *Baker v. United States*, 131 U.S.App.D.C. 7, 401 F.2d 958, 971 (1968), "consistent with minimum prejudice" to defendants, 8 Moore, Federal Practice ¶ 8.06[2], at 8–36 (2d ed. 1976); see *United States v. Sweig*, 441 F.2d 114, 118–19 (2d Cir.), *cert. denied*, 403 U.S. 932, 91

S.Ct. 2256, 29 L.Ed.2d 711 (1971). And where a misjoinder under Rule 8(b) is found, even if it would cause no "special prejudice" to the movant, severance must be ordered. *Cupo v. United States*, 123 U.S.App.D.C. 324, 359 F.2d 990, 993 (1966), *cert. denied*, 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967); *Ward v. United States*, 110 U.S.App.D.C. 136, 289 F.2d 877, 878 (1961); *Ingram v. United States*, 272 F.2d 567, 570 (4th Cir. 1959); see *Schaffer v. United States*, 362 U.S. 511, 513, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).

■ Osorio observes, correctly, that the perjury defined in Count Two is nowhere directly addressed in the preceding conspiracy count, whether as an object, means, or overt act in furtherance of that conspiracy. In the absence of such reference, Osorio argues that the alleged conspiracy and the perjury charged cannot be regarded as components of "the same series of acts or transactions" within the meaning of Rule 8(b). The Government responds by noting that the November 17, 1975 telephone conversation between Lurie and Ryan, *i. e.*, the basis for the Count Two perjury charge against the latter, is among the overt acts cited in Count One. The resultant commonality of proofs to be adduced at trial with respect to Counts One and Two, the Government argues, forms a link that is strong enough to withstand the present Rule 8(b) challenge.

Of the decisions cited by Osorio and the Government in this connection, the cases most square with our own are *United States v. Sweig*, 316 F.Supp. 1148 (S.D.N.Y. 1970), *aff'd*, 441 F.2d 114 (2d Cir.), *cert. denied*, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971), *United States v. Mitchell*, 372 F.Supp. 1239 (S.D.N.Y.), *appeal dismissed* sub nom. *Stans v. Gagliardi*, 485 F.2d 1290 (2d Cir. 1973), and *United States v. Slawik, supra*. As will be seen our present analytic course is not evened by the guidance of these precedents.

In *Sweig*, a fifteen-count indictment charged, *inter alia*, a conspiracy between

---

2. As at least one commentator has observed, the "connected together" reference in Rule 8(a) is the functional equivalent of the "series of acts or transactions" reference in Rule 8(b). 8 Moore, Federal Practice ¶ 8.06[2], at 8–37 (2d ed. 1976).

both defendants to defraud the United States by exerting undue influence over officials of certain federal departments and agencies with respect to matters pending before them; among the overt acts alleged were several telephone calls placed by defendant Sweig, at the behest of his co-defendant Voloshen and on behalf of the latter's client, one Roth, within months before the indictment was returned. Also contained in that indictment were several counts of perjury, each addressed either to one or the other defendant individually; among those counts was, for example, a charge that *Sweig* had falsely sworn before a grand jury that he had never heard of Roth and that he had not telephoned anyone at Voloshen's instance within some three or five preceding years. Rejecting defendant's argument that the separate perjury counts could not be joined in the absence of a count charging conspiracy to commit perjury, and observing the "direct connection between each of the perjury charges and one or more overt acts connected with the conspiracy," the *Sweig* court concluded that the conspiracy count before it "supplies both a technical nexus requisite for the joinder and a practical forecast that there will not be an undue and prejudicial accumulation of evidence requiring difficult or impossible compartmentalization by the jury." 316 F.Supp. at 1158.

That conclusion, endorsed by the Second Circuit on appeal, was echoed in a similar context by the *Mitchell* court. *Mitchell* involved an indictment containing, *inter alia*, a count that charged defendants with conspiracy to obstruct justice via efforts to block SEC and grand jury investigations into certain activities of Robert Vesco in return for a sizeable political contribution from Vesco, as well as attempts by defendants to conceal the motive underlying that donation; the "means" or "objects" of the conspiracy were alleged to have included the relaying, by defendant Sears to co-defendant Mitchell, of Vesco's threat to expose the facts surrounding his contribution unless an SEC subpoena issued to him were quashed. The indictment contained, in addition, several counts against Mitchell and his co-defendant Stans individually, charging each with having committed perjury before a federal grand jury; among those counts, for example, was the charge that Mitchell had testified falsely when he denied having learned from Sears that Vesco had been subpoenaed and was threatening to "tell all" if the subpoena were not withdrawn. In the light of *Sweig*, as well as other precedents, the *Mitchell* court denied defendants' motion for a severance under Rule 8(b), concluding that the Government had "adequately demonstrated a connection between each of the alleged perjury counts and the alleged objects or means of the conspiracy," 372 F.Supp. at 1255, and thus, for purposes of Rule 8(b), had effectively vindicated "the structure of the indictment." *Id.* at 1256.

In *United States v. Slawik*, by contrast, several perjury counts against one of four defendants were ruled to have been improperly joined with, *inter alia*, a conspiracy count and two counts charging substantive offenses arising out of the conspiracy. The indictment in *Slawik* included the charge that defendants had conspired to persuade one Austin, through threats and bribes, to refuse to discuss defendants' activities either with FBI agents or before a federal grand jury; that conspiracy was allegedly promoted by several telephone calls from defendant Slawik to Austin, and a number of trips by Slawik to Austin's home, between May and October 1974. It was alleged in the perjury counts that Slawik had given false grand jury testimony when asked about his conversations with Austin concerning the latter's cooperation with the grand jury and FBI investigations. The *Slawik* court ruled that the perjury counts had been improperly joined with the conspiracy count, and the substantive counts thereunder, "despite some common facts underlying the two sets of counts," 408 F.Supp. at 214, on the ground that the former were "not part of the 'same series of acts or transactions'" as the latter. *Id.* Although it acknowledged that there was prior "authority to the effect that joinder is proper under Rule 8(b) 'if "a direct connec-

tion [exists] between each of the perjury charges and one or more of the overt acts connected with . . . [a] conspiracy count" '," *id.*, the *Slawik* court nonetheless regarded that authority as distinguishable: "*Mitchell, Sweig* and most of the other cases therein cited arose in situations where *each* defendant, named in a conspiracy count, was also charged with having committed perjury about the same subject matter charged in the conspiracy count."[3] *Id.* (emphasis added). And it is at this point that we must part analytic company with *Slawik.*

*Mitchell* and *Sweig* are, to be sure, distinguishable from cases such as *Slawik* and our own. But the distinction noted in *Slawik* does not, this Court concludes, carry with it the significance attributed to it by *Slawik.* Indeed, the fact that the indictments involved in *Mitchell* and *Sweig* contained individual counts of perjury against not one but several defendants made the propriety of joinder in those cases arguably more doubtful, not less so. Thus, the *Sweig* court was obliged to address at least one misjoinder contention that could not be raised in the present context, *i. e.*, that in light of an earlier court's observation that "perjury is as highly a personalized crime as exists upon the statute books," *United States v. Charnay*, 211 F.Supp. 904, 906 (S.D.N.Y.1962), "there is no authority for the joinder of 'distinct and independent offenses of perjury, not provable by the same evidence and not connected together by a charge of conspiracy to commit said perjuries'," 316 F.Supp., *supra*, at 1158. In both *Sweig* and *Mitchell*, joinder of all perjury charges was deemed to have been proper only by virtue of those charges' common link—a conspiracy count to which each count of perjury had been independently connected, as described above. The propriety of joinder between each individual perjury count and the conspiracy count would thus appear to have been regarded by the *Sweig* and *Mitchell* courts, and rightfully so, as an *a fortiori* proposition. Hence the

*Mitchell* court's express recognition that "[i]t is not required that a conspiracy to commit perjury be charged in order to establish the necessary nexus between the alleged conspiracy and the subsequent alleged perjury." 372 F.Supp., *supra*, at 1255.

In the end, what was ultimately persuasive in *Sweig* is no less so here: the Government's argument that " 'proof of the perjury is admissible as false exculpatory statements vis-a-vis the conspiracy and proof of the conspiracy is admissible to show motive and wilfulness with respect to the perjury'." 441 F.2d, *supra*, at 118. In view of "the primary purpose of this kind of joinder * * * [i. e.,] to insure that a given transaction need only be proved once," *Baker v. United States, supra*, 131 U.S.App.D.C. 7, 401 F.2d at 971, this Court concludes that the joinder of Counts One and Two is permissible under Rule 8(b). Compare *United States v. Haim*, 218 F.Supp. 922, 930–31 (S.D.N.Y.1963), with *United States v. Gentile*, 495 F.2d 626, 630–32 (5th Cir. 1974), and *Cupo v. United States, supra*, 123 U.S.App.D.C. 324, 359 F.2d at 992–93; see *United States v. Verra*, 203 F.Supp. 87 (S.D.N.Y.1962); *cf. Scheve v. United States*, 87 U.S.App.D.C. 289, 184 F.2d 695 (1950). See also *United States v. Charnay, supra*, at 907 n. 18; *United States v. Cardall*, 189 F.Supp. 660, 661 (S.D.N.Y. 1960).

### III.

 Osorio has moved, in the alternative, for a severance of Count One from Count Two under Rule 14, F.R.Crim.P. Rule 14 authorizes severance "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses or of defendants * * *." The grant or denial of a Rule 14 motion is a matter for the Court's discretion, *United States v. Ricco*, 549 F.2d 264 at 273 (2d Cir. 1977); *United States v. Falange*, 426 F.2d 930 (2d Cir.), *cert. denied*, 400 U.S. 906, 91 S.Ct. 149, 27 L.Ed.2d 144

---

**3.** It may be noted that, in *Mitchell*, only two of the four defendants named in the conspiracy count had been charged with perjury as well.

(1970), although that discretion is by no means unbounded, see *United States v. Turcotte*, 515 F.2d 145, 150–51 (2d Cir.), *cert. denied*, 423 U.S. 1032, 96 S.Ct. 564, 46 L.Ed.2d 406 (1975); *Schaffer v. United States*, 221 F.2d 17, 19 (5th Cir. 1955).

Osorio argues that severance should be ordered here lest evidence introduced on the perjury charge against Ryan be construed by the jury as proof of a "cover-up" implying both the existence of a conspiracy to be concealed and, in turn, the participation of Osorio in that conspiracy. Thus, it is urged, "The Court should exercise its power under [Rule 14] to prevent Osorio from being tarred by the broad brush of guilt which can result from such cumulative prejudice." Osorio's Main Brief at 9. The answer to such argument should be clear enough: joint trial of Ryan and Osorio on the conspiracy count is unquestionably permissible and, as noted above, substantially all of the evidence on the perjury count against Ryan could properly be adduced against him on such joint trial for conspiracy even in the absence of the perjury count. As another court has observed in a similar context, "[i]t is apparent, then, that the movant [ ] seek[s] to put the Government twice to its proof without showing that [he] will be in any better position with separate trials of the counts of the indictment." *United States v. Verra, supra*, at 91. See *United States v. Corallo*, 413 F.2d 1306, 1327 (2d Cir. 1969); *United States v. Mitchell, supra*, at 1256; *United States v. Sweig, supra*, at 1158–59.

Nor can Osorio reasonably find present comfort in the decisions that he has cited in this connection. In *Cupo v. United States, supra*, the Court of Appeals for the District of Columbia Circuit decided merely that "Rules [8(a) and 8(b)] do not permit cumulation of prejudice by charging several defendants with similar but unrelated offenses." 359 F.2d at 993. In *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964), the same court ruled that there had been prejudicial joinder of two counts against the lone defendant, where the counts in question, although embracing "similar offenses" within the meaning of Rule 8(a), did not entail evidence that

"would have been admissible in separate trials." *Id.* at 93. Such decisions, of course, supply no relevant instruction for the present case. Finally, in *United States v. Kelly*, 349 F.2d 720 (2d Cir. 1965), this Circuit reversed the conviction of one of several defendants tried for conspiracy as well as other offenses. Reversal of defendant Shuck's conviction was dictated, the *Kelly* court concluded, by a combination of circumstances that had developed during the course of trial. Those circumstances included, *inter alia*, the months-long accumulation of damaging evidence directed almost exclusively against Shuck's co-defendants, but nonetheless subject to spill-over, and the admission of voluminous exhibits only questionably relevant to the issue as to which they had been offered and constituting inadmissible hearsay as to Shuck, but nevertheless damning to Shuck's defense. In truth, the guidance offered by *Kelly* that is pertinent here resides solely in the reminder that "the trial judge is under 'a continuing duty at all stages of the trial to grant a severance if prejudice' to a particular defendant is made manifest." *Id.* at 759, *quoting Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). That admonition will of course be heeded by the Court should substantial prejudice to Osorio appear to arise from the joinder of Counts One and Two during the course of trial.

### IV.

Osorio argues, finally, for his severance from Ryan on Count One, resting principally on the authority of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Briefly, Osorio contends that, in the absence of such severance, he will be inevitably and incurably prejudiced (1) should the Government introduce certain portions of Ryan's grand jury testimony and (2) should Ryan decline to take the witness stand and thus be unavailable for cross-examination by Osorio. With Osorio's provisional case so stated, it is clearly unnecessary at the present juncture to address that case. Only if the twin

circumstances anticipated by Osorio do indeed come to pass need the Court consider whether Ryan's grand jury testimony— viewed both in the abstract and in the context of the Government's entire case, see *United States v. Wingate*, 520 F.2d 309 (2d Cir. 1975)—is the sort of out-of-court statement to which the *Bruton* ruling is addressed.

### V.

 Defendant House has moved, under Rule 7(f), F.R.Crim.P., for a bill of particulars complementary to such information as the Government has already supplied in response to House's informal requests for particularization of the indictment. The grant or denial of a bill of particulars is a matter left to the court's discretion. *Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927). That discretion must be informed, however, by certain well-established considerations: whether the requested particularization is necessary to a defendant's preparations for trial, to the avoidance of unfair surprise to the defense, and/or to the protection of defendant against the threat of double jeopardy. *Wong Tai v. United States, supra*, at 82, 47 S.Ct. 300; *United States v. Lebron*, 222 F.2d 531 (2d Cir.), *cert. denied*, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955); *United States v. Addonizio*, 313 F.Supp. 486, 501 (D.N.J.1970) *aff'd*, 451 F.2d 49 (3d Cir. 1971), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972); 1 Wright, Federal Practice and Procedure § 129, at 283 (1969).

Notwithstanding the "liberalization" worked by the 1966 amendment of Rule 7(f), see Notes of Advisory Committee on Rules, this Court concludes that the present requests for particularization would have the Government go beyond the bounds contemplated by that Rule. Requests Nos. 1, 7, and 8 seek information already adequately supplied by the Government within the confines of its knowledge to date; to the extent that the Government is in the future able to offer additional intelligence with respect to those requests, it has agreed to do so without directive from this Court. Request No. 2 calls for such particulars as are already sufficiently disclosed by the indictment itself. Requests Nos. 3, 4, 5, and 6 call for particulars that are either adequately provided in the indictment or are evidentiary in character and hence beyond the legitimate office of a bill of particulars. See *United States v. Bozza*, 234 F.Supp. 15, 16–17 (S.D.N.Y.1964). Finally, Request Nos. 11 and 12 are, in effect, applications for " 'wholesale discovery of the Government's evidence,' which is not the purpose of a bill of particulars under Fed.R.Crim.P. 7(f)." *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975). See *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975); *United States v. Iannelli*, 53 F.R.D. 482 (S.D.N.Y.1971); *United States v. Calegro De Lutro*, 309 F.Supp. 462 (S.D.N.Y.1970).

For the foregoing reasons, defendants' motions are denied.

SO ORDERED.