### UNITED STATES of America

#### v.

**Alan Herbert ABRAHAMS, a/k/a James A. Carr, James A. Brien, John J. Cosulich, Thomas Labus, Robert Ralph Zolla, Michael Shuster, Curtis Beck, Ira Todd Klein, Francis R. H. Nichols, Charles Anderson Wathen, Frank Post and Stephen Buzzi.**

**Crim. No. 78–327–F.**

United States District Court, D. Massachusetts.

Dec. 29, 1978.

Michael A. Collora, Asst. U. S. Atty., Boston, Mass., for plaintiff.

F. Lee Bailey, Anthony N. Cardinale, Salvatore F. Di Masi, Boston, Mass., Robert F. Peck, Jr., Salem, Mass., Eugene X. Giroux, Boston, Mass., Michael A. Ponsor, Brown & Brown, Amherst, Mass., Robert G. Wilson, III, Boston, Mass., John L. Taylor, Jr., Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., Dennis J. Oury, Wood-Ridge, N. J., Michael Manzi, Lawrence, Mass., for defendants.

## MEMORANDUM

FREEDMAN, District Judge.

Alan Herbert Abrahams, a/k/a James A. Carr, and eleven others are named as de-

fendants in a fifty-count indictment returned on August 3, 1978 by a federal grand jury sitting in Boston. The indictment focuses on the operations of Lloyd, Carr & Company ("Lloyd, Carr"), a now defunct commodity futures and options firm with which all of the defendants were associated in some capacity. Count One of the indictment charges all defendants with conspiracy to commit acts of mail and wire fraud.[1] The remaining counts charge the defendants, in various combinations, with substantive acts of mail and wire fraud.[2] Since arraignment, two of the defendants have changed their pleas to guilty.[3] At this time, the Court has before it motions for severance, change of venue and dismissal filed by the remaining defendants.

## The Severance Motions

[1] The defendants[4] each argue that their joinder in the same indictment is prejudicial.[5] After weighing the benefits to the Court, the Government and the public against the possibility of prejudice to the defendants, e. g., *King v. United States*, 355 F.2d 700 at 703 (1st Cir. 1966), I have decided to sever defendant Abrahams from the other defendants and to deny the severance motions in all other respects.

[2] My decision to sever Abrahams rests primarily upon the comparative uniqueness of his role in the alleged conspiracy and the apparent irreconcilable conflict between his right to a fair trial and the theory of the case likely to be relied upon by the other defendants. Abrahams was the linchpin of the alleged conspiracy.[6] The indictment suggests that he created Lloyd, Carr, brought the other defendants into the firm, and directed its operations. In an attempt to dispute the Government's allegations that their participation was knowing and intelligent, the other defendants are likely to offer evidence tending to show that they acted in good faith,[7] relying on Abrahams' registration with the Commodity Futures Trading Commission and his generally solid reputation in the commodities business, and that they had no knowledge of Abrahams' true identity or prior criminal background during their tenure at Lloyd, Carr. The introduction of evidence of Abrahams' prior criminal background would be highly prejudicial to him; exclusion of such evidence might be prejudicial to the other defendants.

Without Abrahams, the possibility of prejudice from trial together of the remaining defendants is too remote to justify

---

1. 18 U.S.C. § 371 is the general federal conspiracy statute under which the defendants are charged.

2. More specifically, the defendants are accused of violations of 18 U.S.C. § 1341 which prohibits mail fraud, 18 U.S.C. § 1342 which prohibits the use of fictitious names or addresses in connection with mail fraud, and 18 U.S.C. § 1343 which prohibits fraud by wire, radio or television.

3. The two are: Ira Todd Klein and Charles Anderson Wathen.

4. Defendants Abrahams, Brien, Cosulich, Labus, Zolla, Shuster, Beck and Post filed motions for severance in which defendant Buzzi joined. The severance motions were heard, together with the motions for change of venue, on November 22, 1978.

5. Federal Rule of Criminal Procedure 8(b) permits the joinder of two or more defendants in the same indictment provided that ". . . they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Federal Rule of Criminal Procedure 14 permits a severance of defendants where it appears that a defendant is prejudiced by such joinder. But, where defendants are properly joined under Rule 8(b), as they are in this case, a Rule 14 motion for severance is addressed to the discretion of the district court and the defendant bears the burden of making a strong showing of prejudice. *E. g., United States v. Smolar*, 557 F.2d 13 at 21 (1st Cir.), *cert. denied*, 434 U.S. 866, 966, 971, 98 S.Ct. 203, 508, 523, 54 L.Ed.2d 143, 453, 461 (1977).

6. I note that only Abrahams is named in all fifty counts of the indictment.

7. It appears that good faith, in the sense of lack of intent to defraud, is a defense to charges of mail or wire fraud under 18 U.S.C. §§ 1341, 1343. *See, e. g., United States v. Klein*, 515 F.2d 751 (3rd Cir. 1975); *United States v. Sheiner*, 273 F.Supp. 977 (S.D.N.Y.1967), *affirmed* 410 F.2d 337 (2d Cir.), *cert. denied*, 396 U.S. 825, 859, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969).

further severance.[8] The likelihood that the Government will introduce at trial prior statements or other evidence against some defendants that will be prejudicial to others is counterbalanced by sufficient rules of exclusion [9] and requirements for admissibility [10] to protect the defendants at trial. Also, no defendant has informed the Court what evidence the Government might offer against some codefendants which would be unduly prejudicial to others. Speculation is not a ground for severance. *Cf. United States v. Jackson*, 549 F.2d 517 at 524 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). Similarly, there is an absence here of, a showing that exculpatory testimony would be available if the defendants were tried separately. The bald assertion that joint trial will preclude such testimony is insufficient to support a severance. *See United States v. Smolar*, 557 F.2d 13 at 21 (1st Cir.), *cert. denied*, 434 U.S. 866, 966, 971, 98 S.Ct. 203, 508, 523, 54 L.Ed.2d 143, 453, 461 (1977). *See also, United States v. Wofford*, 562 F.2d 582 at 586 (8th Cir. 1977), *cert. denied*, 435 U.S. 916, 98 S.Ct. 1471, 55 L.Ed.2d 507 (1978). Nor will the possibility of disproportionate evidence or conviction based merely upon association justify severance in this case. *See United States v. Smolar, supra*, 557 F.2d at 21; *United States v. Alpern*, 564 F.2d 755 at 758 (7th Cir. 1977). "[T]he proper inquiry is whether the evidence is such that the jury cannot be expected to 'compartmentalize' it and then consider it for its proper purposes." *United States v. Dansker*, 537 F.2d 40 at 62 (3rd Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Nothing before me indicates that a well instructed jury will be unable to consider the evidence "for its proper purposes."

## The Venue Motions

■ I turn now to the defendants' [11] motions for change of venue which are based upon prejudicial pretrial publicity.[12] Because of my conclusion that Abrahams must be tried separately and because Chief Judge Caffrey of this District determined as recently as July of 1978, in another matter, that Abrahams could not receive a fair trial in the Northeastern section of the United States, *United States v. Abrahams*, 453 F.Supp. 749 at 753 (D.Mass.1978), I consider Abrahams' venue motion first.

In July, Judge Caffrey granted Abrahams' motion for change of venue in a case charging him with making unsworn false statements concerning his identity and background to a United States Magistrate during a removal and bail proceeding in violation of 18 U.S.C. § 1001. Applying the standards enunciated in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Rideau v. Louisiana*, 373 U.S.

---

8. I note, however, that a trial court has a ". . . continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960). *See United States v. Mardian*, 178 U.S. App.D.C. 207 at 213, 546 F.2d 973 at 979 (1976).

9. *E. g., Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (evidence of a confession by a codefendant implicating another may not constitutionally be introduced at joint trial). *See United States v. Cleveland*, 590 F.2d 24 (1978).

10. *E. g., United States v. Martorano*, 557 F.2d 1 at 11, *reh. denied*, 561 F.2d 406 (1st Cir. 1977), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978) (statement of co-conspirator in furtherance of conspiracy admissible only after determination that declarant and defendant were members of same conspiracy at time statement made). See Fed.R.Evid. 801(d)(2)(E).

11. Defendants Abrahams, Brien, Cosulich, Labus, Zolla, Shuster and Post filed motions for change of venue in which defendant Buzzi joined.

12. Federal Rule of Criminal Procedure 21(a) provides:

(a) For Prejudice in the District. The court upon motion of the defendant shall transfer the proceeding as to him to another district whether or not such district is specified in the defendant's motion if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district.

723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); and *Patriarca v. United States*, 402 F.2d 314 (1st Cir. 1968), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969), Judge Caffrey stated that:

> . . . the extensive pretrial publicity in all Boston media—with respect to the allegedly unlawful behavior of the defendant and Lloyd, Carr & Co., defendant's prior convictions, and the other charges pending against him—has created in the District of Massachusetts an atmosphere of pervasive community prejudice so inflammatory as to substantially reduce the reasonable likelihood of Abrahams obtaining a fair trial before a panel of impartial jurors anywhere in this District. I also find that the media, in the exercise of First Amendment rights which are not questioned by this Court, *see, e. g., Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 547–70, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), have made it impossible for Abrahams to receive a fair trial anywhere in Massachusetts, the rest of New England, or the Northeastern section of the United States, including New York, New Jersey, or Pennsylvania.

*United States v. Abrahams, supra*, 453 F.Supp. at 753. The record before Judge Caffrey included a "voluminous collection of newspaper articles," *id.* at 751, which "paint[ed] a black and bleak picture of Mr. Abrahams," *id.* at 752. That same collection is before me today as part of the record, supplemented by articles which have appeared since Judge Caffrey's decision.

In light of the collection of articles before Judge Caffrey, which collection is now before me, his findings, which I adopt, and the more recent publicity concerning defendant Abrahams, which includes a *Boston Magazine* article naming him as a "Turkey of the Year" for his "scams against those seeking scams" and illustrated by what appears to be a United States Marshal's Office mugshot of him, I am compelled to grant Abrahams' motion for change of venue because of prejudicial pretrial publicity. I find specifically that Abrahams has shown a likelihood of prejudicial publicity precluding a fair trial, *see United States v. Abrahams,*

*supra*, 453 F.Supp. at 751, that there is an "incriminating nexus" between the pretrial publicity and the charges against Abrahams, *cf. Patriarca v. United States, supra*, 402 F.2d at 317, that, contrary to the Government's assertion, the publicity has been so inflammatory and pervasive that its effect has not and will not be cured by a passage of time permissible under the Speedy Trial Act. *See United States v. Abrahams, supra*, 453 F.Supp. at 753–754. I am satisfied that there exists so great a prejudice against Abrahams that he cannot obtain a fair trial anywhere in this District. Fed.R.Crim.P. 21(a). *See* n. 12, *supra*.

The prejudicial publicity concerning Abrahams was not limited to this District. As Judge Caffrey noted, the major metropolitan newspapers in other parts of the Eastern United States have carried stories concerning Abrahams and his difficulties. *United States v. Abrahams, supra*, 453 F.Supp. at 754. Moreover, Abrahams, since Judge Caffrey's decision, has been tried on various charges in both Michigan and Texas. I note also that Lloyd, Carr had branch offices in Connecticut, Georgia, Pennsylvania, Michigan, Illinois, Missouri, Texas and California, and that its activities have been the subject of the CBS Television Network show "60 MINUTES," a video tape of which was viewed by the Court at the hearing on the venue motions in this case. In an effort to ensure a fair trial for Abrahams, and keeping in mind the locations of the activities of Lloyd, Carr and the prejudicial publicity, I have selected the District of Arizona, located at Phoenix, as a forum where he is likely to obtain a trial before untainted jurors.

With Abrahams severed from this case and venue of the charges against him transferred to Arizona, the venue motions of the remaining defendants are considerably weakened, and, in fact, counsel for a number of defendants have indicated that if Abrahams were severed and transferred, they would not press their venue motions at this time. Generally, but not without exception, the prejudicial publicity has focused upon Abrahams himself and to some

extent upon Lloyd, Carr.[13] There has been little publicity concerning the individual remaining defendants themselves.

I am, however, concerned that the publicity in the Boston area, once the headquarters of Lloyd, Carr, and now the seat of legal activity concerning its operations, has been so consistent and pervasive that selection of a fair and impartial jury here would be quite difficult, even under the voir dire approach suggested by the Court of Appeals for the First Circuit in *Patriarca v. United States, supra,* 402 F.2d at 317–318. The Government has suggested the selection of a jury panel from Western Massachusetts as a possible solution and I agree.[14] Although "the Springfield Area is a major market for the two Boston dailies which contained much of the prejudicial material" regarding Abrahams himself, *United States v. Abrahams, supra,* 453 F.Supp. 754, I am convinced that the likelihood of juror taint is very low, at least in the more rural areas of Western Massachusetts, and in any case, is certainly lower than it is in Boston. Assuming a careful voir dire, there appears to be no reason why a fair and impartial jury could not be impanelled in Springfield. Federal Rule of Criminal Procedure 21(a), see n. 12, *supra,* itself favors trial in the district where prosecution is pending. Rule 21(a) provides for transfer of venue only where the defendant "cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district." Trial of this case, except as to Abrahams, will therefore be held in Springfield.

*The Motions to Dismiss*

I treat the motions to dismiss as if filed by all defendants.[15]

The defendants' first group of contentions in support of dismissal relates to the proceedings of the grand jury. The defendants argue that dismissal is warranted because of selective prosecution, that the grand jury was biased because of prejudicial pre-indictment publicity, that there was misconduct on the part of the Assistant United States Attorney prosecuting the case, and that the grand jury was inadequately instructed on the relevant law. The selective prosecution claim is conclusory and unsupported by memorandum, affidavit or the record. The defendants are therefore not entitled to an evidentiary hearing on that claim. *United States v. Bourque,* 541 F.2d 290 at 292–293 (1st Cir. 1976). The defendants' claim that the grand jury was biased is not sufficient to justify a dismissal of the indictment.[16] "A presumption of regularity attaches to grand jury proceedings, *In re Lopreato,* 511 F.2d 1150, 1152 (1st Cir. 1975) . . .," *In re Inzirillo,* 542 F.2d 90 at 91 (1st Cir. 1976), and ". . . the fact alone of such publicity did not in itself constitute a sufficient showing of bias and prejudice." *Estes v. United States,* 335 F.2d 609 at 613 (5th Cir. 1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559, *reh. denied,* 380 U.S. 926, 85 S.Ct. 884, 13 L.Ed.2d 814 (1965), citing *Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). Similarly, the alleged "misconduct" of the Assistant United States Attorney, who apparently made certain comments to the grand jury, while perhaps not becoming of a Government attorney, was not of constitutional dimension, nor serious enough to warrant dismissal in the face of an abundance of

---

**13.** I note that Judge Caffrey's decision relates only to Abrahams himself.

**14.** The Government's suggestion is that the jury panel itself be selected from Western Massachusetts and the trial be held in Boston. I believe undue hardship to the panel would result from such a solution. Selection of a panel from Western Massachusetts, however, with trial in Western Massachusetts appears to be viable.

**15.** Because, however, of my decision to sever Abrahams from the case and to grant his motion for change of venue, I do not rule on the motions to dismiss as they relate to him.

**16.** I note that the defendants' claim in this regard was in the alternative. They sought either dismissal or the right to inspect the grand jury minutes based on their claim of particularized need. On November 7, 1978, the Magistrate to whom the pretrial motions in this case had been referred granted the latter remedy of inspection.

evidence supporting indictment. *Cf. United States v. Riccobene*, 451 F.2d 586 (3rd Cir. 1971). Dismissal of an indictment is warranted only for ". . . such irregularities as infect the proceedings of the grand jury, or deprive the defendants of a fundamental right or violate the paramount policy of the United States . . ." *United States v. Kazonis*, 391 F.Supp. 804 at 805 (D.Mass.1975), *affirmed* 530 F.2d 962 (1st Cir.), *cert. denied*, 429 U.S. 826, 97 S.Ct. 80, 50 L.Ed.2d, 88 (1976). Finally, defendants' claim that the grand jury was inadequately instructed is without merit.

By their next group of contentions, the defendants attack the indictment on its face. The defendants argue that dismissal is required because of duplicitous joinder of crimes, and defective and misleading allegation of the jurisdictional element of mailing, and that dismissal is required because exclusive jurisdiction for the crimes alleged in the indictment is provided for in Title 7 of the United States Code, 7 U.S.C. § 1, *et seq.*

 The defendants' duplicitous joinder argument is based on the incorporation in substantive counts of some of the paragraphs of the conspiracy count. The argument may be readily rejected. Incorporation by reference is permissible in criminal indictments. *E. g., United States v. Caldwell*, 544 F.2d 691 at 695 (4th Cir. 1976). The mere fact that some of the incorporated paragraphs begin with the phrase "[i]n furtherance of the conspiracy and scheme" does not render the substantive counts duplicitous. Only one offense, the substantive offense, is charged in each of those counts, and every count in the indictment charges a separate offense. *Cf. United States v. Bush*, 522 F.2d 641 at 649 (7th Cir. 1975), *cert. denied*, 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748, *reh. denied*, 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976).

 The defendants' contention that the indictment defectively and in a misleading way alleges the jurisdictional element of mailing may also be rejected. The substantive counts of the indictment contain the phrase "did knowingly cause to be delivered by mail, according to the direction thereon, . . ." This phrase, which tracks the language of 18 U.S.C. § 1341, the mail fraud statute, is a sufficient statement of jurisdiction. The indictment need not specifically refer to the United States Postal Service as opposed to some private postal system. *E. g., United States v. Constant*, 501 F.2d 1284 at 1287 (5th Cir. 1974), *cert. denied*, 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 840 (1975).

 The defendants' argument that dismissal is required because exclusive jurisdiction for the crimes alleged in the indictment is provided for in Title 7 of the United States Code is a clever one. The defendants rely on 7 U.S.C. § 2, which vests the Commodities Futures Trading Commission ("CFTC") with "exclusive jurisdiction" with respect to transactions involving contracts for sale of a commodity for future delivery, and 7 U.S.C. § 13(b), which prohibits, *inter alia*, the dissemination by mail or wire of ". . . false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce. . . ." They argue that, read together, 7 U.S.C. § 2 and 7 U.S.C. § 13(b), because of the "exclusive jurisdiction" of the CFTC, bar prosecution for mail or wire fraud under 18 U.S.C. §§ 1341, 1343, where transactions involving the sale of commodities futures or options are involved.

Without yielding to the temptation to delve deeply into the interplay between the commodities fraud, securities fraud and mail and wire fraud statutes, I reject the defendants' argument. First, the Supreme Court has held that 15 U.S.C. § 77q(a), the fraud provision of the Securities Act of 1933, does not repeal by implication the mail fraud statute. "The two," said Mr. Justice Reed, "can exist and be useful, side by side." *Edwards v. United States*, 312 U.S. 473 at 484, 61 S.Ct. 669 at 675, 85 L.Ed. 957 (1941) (footnote omitted). *See United States v. Tallant*, 547 F.2d 1291 at 1299 (5th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977). I believe that 7

U.S.C. § 13(b) and 18 U.S.C. §§ 1341, 1343 can also exist together, "side by side." Second, the instant indictment charges the mailing and wiring, in furtherance of a scheme, of such things as purchase confirmations, checks, account cards and orders to purchase. Nowhere is it alleged that the defendants mailed or wired reports containing misleading crop or market information or conditions affecting commodity prices. The acts charged, therefore, do not appear to constitute violations of 7 U.S.C. § 13(b). They do, however, constitute violations of 18 U.S.C. §§ 1341, 1343, which prohibit the use of the mails or wires in the execution of a scheme or artifice to defraud. *Cf. United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).

AN APPROPRIATE ORDER SHALL ISSUE.