**UNITED STATES of America, Appellee,**

v.

**William J. O'CONNELL, Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Richard CROSSMAN, Defendant, Appellant.**

**Nos. 81-1222, 81-1223 and 81-1648.**

United States Court of Appeals, First Circuit.

Argued Jan. 3, 1983.

Decided April 1, 1983.

Geline W. Williams, Boston, Mass., by appointment of the Court, with whom Kirk Y. Griffin, and Griffin & Higgins, Boston, Mass., were on brief, for Richard Crossman.

Henry D. Katz, Boston, Mass., for William J. O'Connell.

Paul F. Healy, Jr., Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, ALDRICH and BREYER, Circuit Judges.

BREYER, Circuit Judge.

After a jury trial, appellants William O'Connell and Richard Crossman were convicted of conspiring to receive and possess, and of receiving and possessing, goods (namely, jewelry) stolen from an interstate air carrier shipment. 18 U.S.C. §§ 371, 659. Crossman was also convicted of perjury before the grand jury investigating the theft. 18 U.S.C. § 1623. And, after a separate trial, Crossman was convicted of forcibly assaulting the officer who served him with a grand jury subpoena. 18 U.S.C. § 111. O'Connell and Crossman appeal, primarily on the ground of insufficient evidence. After examining their arguments and the record, we affirm their convictions.

I

We first summarize the evidence presented on the "stolen goods" counts. The following facts are not in dispute. On July 30, 1980, two Hong Kong firms sent three packages of jewelry worth more than $60,000 to Town & Country Jewelry Co. in Revere, Massachusetts. Northwest Airlines flew the packages to Seattle where they were supposed to be transferred to another Northwest flight, which would take them to Boston via Washington, D.C. Town & Country did not receive the jewels. O'Connell worked as a cargo handler for Eastern Airlines at Logan Airport, Boston; Crossman was a friend of O'Connell.

The government tried to show that O'Connell and Crossman stole the jewels from Logan. Its evidence that they at least unlawfully conspired to (and did) receive and possess the jewelry fell into two categories. First, the government introduced Northwest documents (such as a cargo manifest) and testimony about Northwest's "valuable cargo" handling practices to show that the jewels reached Logan on July 31, 1980. Second, the government presented detailed testimony by Toni Ann Jozapaitis, Crossman's former girlfriend.

Jozapaitis testified about both what she saw Crossman and O'Connell do between July 31 and August 2 and about what she heard them say. She testified that at 11:30 p.m. on July 31 O'Connell and Crossman met in the apartment that she and Crossman shared. They spoke briefly, exchanged a green piece of paper, and left. Several hours later Crossman returned, and told Jozapaitis that he had gone to Charlestown to sell something for O'Connell. He showed her a green piece of paper, which he called a bill of lading; it had $5,000 written on it.

Jozapaitis further testified that the following morning, August 1, Crossman told her he was going to sell jewelry that O'Connell had gotten at the airport. He said that the proceeds would be divided among Crossman, O'Connell and two other men from the airport. Crossman then left for Charlestown, while Jozapaitis, who was pregnant, went to Beth Israel Hospital for a checkup. As she left the hospital, she received a note from Crossman with a $20 bill and a message to take a cab home. She called him, and he told her not to worry about a $20 cab fare because he had a lot of money.

When Jozapaitis returned home Crossman showed her cash which he said amounted to $2,000. He said it was from the sale of jewelry in Charlestown. He then showed her $21,000 wrapped in foil in the refrigerator. Shortly thereafter, O'Connell arrived and she saw Crossman give the $21,000 to O'Connell. That evening she and Crossman went to an appliance store in Revere, where Crossman paid $1,000 cash for a refrigerator, a washing machine, and a portable television set.

Jozapaitis said that the next night, August 2, she heard Crossman ask O'Connell whether the jewel theft had led to an investigation at the airport. O'Connell replied that it had not because the jewels were sold before anyone knew they were missing. O'Connell complained that they should have received more money because the bills of lading for the separate packages added up to more than $68,000.

In addition to Jozapaitis' testimony, the government introduced other evidence showing that Eastern Airlines Cargo crews unloaded Northwest Cargo; that O'Connell was at work as a cargo handler for Eastern between 2:20 p.m. and 10:20 p.m. on July 31; that O'Connell had financial problems; that Crossman earned $450 per week as a truck driver; and that Crossman indeed paid $1,000 cash for the appliances that Jozapaitis mentioned.

In the face of this evidence Crossman and O'Connell testified, denying any involvement in the jewels' disappearance. O'Connell introduced alibi testimony to the effect that he went directly from work on July 31 to the Turf Lounge where he stayed from 10:30 p.m. until 2:00 a.m. The defendants also vigorously attacked the reliability of the Northwest "routine procedure" evidence. And, they tried to impeach Jozapaitis by showing she drank heavily and had a violent and unstable relationship with Crossman.

## II

1. Appellants argue that their convictions for receiving and possessing stolen goods (and the related conspiracy convictions) should be set aside on grounds of insufficient evidence. We do not agree. Although appellants' attacks on the "routine procedure" evidence seriously weaken its probative value, that evidence does not stand alone. Despite their efforts to impeach Jozapaitis' credibility, the jury could well have believed her. *See United States v. Hinds,* 662 F.2d 362, 366 (5th Cir. 1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1720, 72 L.Ed.2d 140 (1982); *United States v. Anderson,* 509 F.2d 312, 331 (D.C.Cir. 1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975). And, if believed, her evidence is damning.

Appellants rely upon *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), which holds that an admission, like an extrajudicial confession, must have corroboration to support a conviction. The government argues that when read in light of the companion case of *Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954), *Opper's* corroboration requirement is limited to admissions made after the completion of the crime and made to a government agent. This question has split the courts. *Compare United States v. Head,* 546 F.2d 6, 9 (2d Cir.1976) (dictum) (corroboration may not be required for admissions made during commission of crime), *cert. denied sub nom. Wheaton v. United States,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977), *and Kaneshiro v. United States,* 445 F.2d 1266, 1270 (9th Cir.) (corroboration not required for admission made to "unwitting accomplice"), *cert. denied,* 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971), *with United States v. Hallman,* 594 F.2d 198, 201 (9th Cir.) (dictum) (admission during commission of crime must be corroborated), *cert. denied,* 444 U.S. 828, 100 S.Ct. 54, 62 L.Ed.2d 36 (1979), *and United States v. Northrup,* 482 F.Supp. 1032, 1038 (D.Nev. 1980) (admission to acquaintance may require corroboration unless it has special indicia of reliability). However, we need not decide the question, for even if we assume *Opper* applies, there is adequate independent corroboration. *See Bryson v. United States,* 238 F.2d 657, 662 (9th Cir.1956), *cert.*

*denied,* 355 U.S. 817, 78 S.Ct. 20, 2 L.Ed.2d 34 (1957).

Contrary to the appellants' argument, what must be corroborated is not the whole of Jozapaitis' testimony. If eyewitness testimony about, say, a defendant's shooting of a gun is admissible and corroborative, that testimony does not suddenly become less admissible or corroborative or itself in need of corroboration simply because the eyewitness *also* heard the defendant confess. Rather, *Opper* requires corroboration of the *admissions* about which Jozapaitis testified. And, there was ample corroboration. The fact that the jewels were sent to Boston is some evidence they arrived in Boston. Their unexplained disappearance is some evidence they were stolen. The fact that O'Connell worked at Logan on the cargo crew at the relevant time is some evidence of opportunity. The existence of Crossman's financial problems is some evidence of motive. The appellants' comings and goings, as reported by Jozapaitis, Crossman's keeping large sums of money wrapped in foil in the refrigerator, his sudden large purchases, his ordinary salary are all evidence of some surreptitious activity and guilty knowledge on their part. And, together with the circumstances of O'Connell's employment, they strengthen the inference that the jewels were stolen.

■ This corroborative evidence, of course, need not be sufficient standing alone to establish guilt; "[i]t is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." *Opper v. United States,* 348 U.S. at 93, 75 S.Ct. at 164; *accord Smith v. United States,* 348 U.S. at 156, 75 S.Ct. at 199. It is clear beyond dispute that the corroborative testimony offered by Jozapaitis, when taken together with the other evidence introduced by the prosecution, was more than sufficient for a jury to infer that the admissions were true. Those admissions, in turn, were certainly sufficient in conjunction with the rest of the evidence for a jury reasonably to conclude that the elements of the offenses had been established beyond a reasonable doubt.

■ 2. The same jury that convicted Crossman and O'Connell on the stolen goods counts also convicted Crossman of perjury. It found that he lied when he told the grand jury that he obtained the $1,000 cash with which he paid for appliances "at the track." The jury might reasonably have believed Jozapaitis' testimony that a few hours before buying the appliances he had shown her $1,800 in cash, that he said the cash had come from the sale of jewels, and that he later said he would buy the appliances with the "money that he had in his pocket that he had just got." While the testimony does not make it *logically* impossible for Crossman to have had another $1,000 in cash from "the track" in his pocket, it does (together with other evidence) warrant a jury finding guilt beyond a reasonable doubt. Moreover, since the statement, if believed, might have made Crossman's conduct less suspicious, and thereby have influenced the grand jury, the statement was "material" and thus a proper object of the statute. *See* 18 U.S.C. § 1623; *United States v. Giarrantano,* 622 F.2d 153, 156 & n.7 (5th Cir.1980).

■ 3. O'Connell argues that the district court should have severed Crossman's perjury count and tried it separately. If O'Connell means that the court could not permit joinder of this count with the stolen goods counts, he is wrong. Fed.R.Crim.P. 8(b) provides that the trials of several defendants may be joined if the defendants "are alleged to have participated in the same act or transactions or in the same series of acts or transactions constituting an offense or offenses." As we pointed out in *United States v. Turkette,* 632 F.2d 896, 908 (1st Cir.1980), *rev'd on other grounds,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the "relatedness of offenses can be established by demonstrating that essentially the same facts must be shown for each of the consolidated crimes." Here, the facts necessary to show guilt on the stolen goods charges made up an important subset of those needed to show guilt on the perjury charge. As the Ninth Circuit recently stated in upholding a joint trial for two defend-

ants, both of whom were accused of transporting a stolen truck and one of whom was accused of perjury about a receipt that he had when driving the truck:

> [The defendant's] alleged false testimony related directly to the illegal transaction with which appellant was charged. Indeed, *the facts underlying the joined offenses were so intertwined that most of the evidence admissible in proof of one was also admissible in proof of the other.* In these circumstances joinder served the purpose of Rule 8(b); it permitted significant gains in trial efficiency without subjecting the defendants to substantial prejudice.

*United States v. Barney,* 568 F.2d 134, 135–36 (9th Cir.) *(per curiam), cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978) (emphasis added and citations omitted). The same reasoning is equally applicable here. *Cf. United States v. Duzac,* 622 F.2d 911, 913 (5th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980); *United States v. Isaacs,* 493 F.2d 1124, 1159 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *United States v. Friedman,* 445 F.2d 1076, 1083 (9th Cir.), *cert. denied sub nom. Jacobs v. United States,* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971).

■ If O'Connell is arguing that the jury's consideration of Crossman's perjury count unlawfully prejudiced its consideration of his guilt on the stolen goods counts, he is equally wrong. The risk of prejudice is one properly addressed by a motion under Fed.R.Crim.P. 14. The trial court's decision not to sever for prejudice under Rule 14 will be reversed only for abuse of discretion. *See United States v. Ciampaglia,* 628 F.2d 632, 643 (1st Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221 (1980); 1 C. Wright, *Federal Practice and Procedure* § 227, at 854–55 (2d ed. 1982). Even if we make the assumption that O'Connell properly raised this matter in the court below, we find no abuse of discretion.

For one thing, most of the perjury count evidence was admissible against O'Connell anyway on the stolen goods charges. Much of the evidence not so admissible, such as evidence that the race track in question was closed, was not directly harmful to O'Connell. For another thing, the district court properly instructed the jury about what evidence it could and could not consider against Crossman. Finally, it is difficult to see how the jury could have convicted Crossman of perjury unless it thought he had received the stolen goods. It was less likely to reason from guilt on the perjury count to guilt on the stolen goods counts than vice versa. Thus, a single trial, under both Rules 8(b) and 14, was permissible.

■ 4. Crossman attacks his separate conviction for forcibly assaulting, impeding and intimidating Donald DeFago, a federal officer who served him with a grand jury subpoena. 18 U.S.C. § 111. For the most part, we need not decide the various points of law Crossman raises, for even if we assume, purely for the sake of argument, that he is correct in his description of the standards to be used in a § 111 case, the evidence here shows that those standards were satisfied.

The evidence, read in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), shows that DeFago and another agent, Sara Durant, approached Crossman in a parking lot with the subpoena. Crossman knocked the subpoena to the ground and headed for his car. DeFago tried to hand it to him again. Crossman took the subpoena, crumbled it up, began to shout obscenities, grabbed DeFago's lapels, poked him repeatedly in the chest, and threatened to knock his head off. DeFago then pushed Crossman away and left.

The record shows that at the time he was poking DeFago, Crossman had a present ability to inflict the threatened harm. *See United States v. Johnson,* 462 F.2d 423, 428 (2d Cir.1972) (requiring present ability to inflict harm), *cert. denied,* 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed.2d 602 (1973). *But see Ladner v. United States,* 358 U.S. 169, 177, 79 S.Ct. 209, 213, 3 L.Ed.2d 199 (1958) (dictum) (construing predecessor statute). Moreover, there was "some degree of pres-

ently applied force." *See United States v. Hightower,* 512 F.2d 60, 61 (5th Cir.1975); *compare United States v. Cunningham,* 509 F.2d 961, 963 (D.C.Cir.1975) (*per curiam*) (presently applied force needed), *with United States v. Bamberger,* 452 F.2d 696, 699 (2d Cir.1971) (threat of present force sufficient), *cert. denied,* 405 U.S. 1043, 92 S.Ct. 1326, 31 L.Ed.2d 585 (1972), *and Burke v. United States,* 400 F.2d 866, 868 (5th Cir. 1968) (same), *cert. denied,* 395 U.S. 919, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969). This evidence, along with DeFago's testimony that he was "apprehensive" and concerned about his safety, demonstrates a "reasonable fear of imminent harm." *See United States v. Marcello,* 423 F.2d 993, 1010 n. 26 (5th Cir.) (quoting district court instruction), *cert. denied,* 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970); *cf. United States v. Frizzi,* 491 F.2d 1231 (1st Cir.1974) (no requirement of fear in prosecution for forcibly resisting, opposing, or interfering with officer); *United States v. Jacquillon,* 469 F.2d 380, 385 (5th Cir.1972) (defining "intimidation" in federal bank robbery statute to mean "to make fearful or put into fear"), *cert. denied,* 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973).

■ We further disagree with Crossman that DeFago ceased to be "engaged in . . . the performance of his official duties," 18 U.S.C. § 111, once he had handed Crossman the subpoena. Common English suggests that he continued to be so engaged while he remained in the parking lot, and common sense suggests that he continued to receive the statute's protection.

■ Finally, Crossman objects to the district court's instruction about "force," which the court defined to include "such threat or display of physical aggression . . . as reasonably inspires fear, pain, or bodily harm." The court also told the jury that the "use of force does not necessarily entail physical contact." Crossman did not object to the instruction when it was given, and at a minimum, the instruction is not "plain error." *See* Fed.R.Crim.P. 30, 52(b); *United States v. Bamberger,* 452 F.2d at 699 (defining "forcibly" in same terms).

6. Crossman sought a new trial. The decision of the district court denying the motion was not an abuse of discretion. *United States v. Wright,* 625 F.2d 1017, 1019 (1st Cir.1980).

*Affirmed.*