**UNITED STATES of America**

v.

**Herbert A. BUTT a/k/a Alan Butt**

**and**

**James T. Semon.**

**Crim. A. No. 90–10067–Y.**

United States District Court,
D. Massachusetts.

July 30, 1990.

Alexandra Leake, Boston, Mass., for U.S.

Robert F. Collins, Braintree, Mass., for Herbert A. Butt.

Gael Mahony, Hill & Barlow, Boston, Mass., for James T. Semon.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

In its first six counts, this eight count indictment charges Herbert A. Butt ("Butt") with various acts of extortion, conspiracy to engage in extortion, racketeering, and conspiracy to engage in racketeering. The conspiracy counts do not name any of Butt's alleged co-conspirators. The seventh and eighth counts charge James T. Semon ("Semon") with two acts of perjury.

### I. Motion to Dismiss Counts Seven and Eight.

Semon moves to dismiss the charges against him because (1) the questions were too ambiguous to form the basis of a perjury indictment, and (2) the indictment fails adequately to specify the facts underlying the alleged perjury.

#### A. The alleged ambiguity in the questions.

Semon was subpoenaed to appear before a United States Grand Jury investigating alleged shakedowns of prostitutes in Malden. Having been guaranteed immunity from prosecution, Semon answered the questions put to him, denying knowledge of improprieties by his partner Butt and denying that he himself had received any money in connection with police duties.

Semon argues that the phrase "in connection with ... police duties" was fundamentally ambiguous as used by the prosecutor in her questions to him before the Grand Jury. Semon sets forth six possible types of conduct which could fit the description of taking "money ... in connection with ... police duties." They include: (1) receipt of a salary; (2) receipt of other compensation from the police department; (3) legal receipt of money seized from criminal suspects; (4) illegal taking of money seized from criminal suspects; (5) illegal receipt of money for the purpose of per-

**36**

forming police duties (i.e., providing extra surveillance); (6) illegal receipt of money for the purpose of forbearing from performing police duties. Based on these six possible interpretations of the phrase "in connection with ... police duties," Semon argues that the questions were so fundamentally ambiguous that the perjury charges against him should be dismissed.

■ The general rule is that when a " 'question and answer may have more than one meaning standing alone, their intended meaning is ordinarily an issue for the jury to determine from their context and other indicia of the witness' intent in giving the answer.' " *United States v. Martellano*, 675 F.2d 940, 942 (7th Cir. 1982) (quoting *United States v. Williams*, 536 F.2d 1202, 1205 [7th Cir.1976] ). An exception to this general rule occurs when the questions are "fundamentally ambiguous." *United States v. Lighte*, 782 F.2d 367, 375 (2nd Cir.1986). The "fundamentally ambiguous" defense serves to protect an individual from a line of questioning so vague as to provide no legally sufficient basis for a perjury conviction. *Id.* A question is not ambiguous (1) if persons of ordinary intellect can agree as to the meaning of the question, and (2) if the questioner and answerer use a phrase with apparent mutual understanding without providing a specific definition of the phrase. *United States v. Lattimore*, 127 F.Supp. 405, 410 (D.D.C.1955). The purpose of the defense is to ensure that a jury does not determine that a defendant is guilty of perjury based on "groundless surmise" as to the meaning of the question and the defendant's understanding of the question's meaning. *Id.* at 409.

■ Courts have recognized that although a perfectly phrased question is ideal, one is not always presented and therefore juries may consider the context of the question in determining whether a question is ambiguous. *United States v. Martellano*, 675 F.2d at 943; *United States v. Bonacorsa*, 528 F.2d 1218, 1221

(2nd Cir.1976). In order to give the jury a foundation from which they may determine the reasonable meaning of a question, juries should be permitted to consider the purpose of the investigation, whether the purpose was known to the defendant at the time of the investigation, and the series of questions asked of the defendant during the proceeding. *Martellano*, 675 F.2d at 943. Certainly, it is illogical to lift the question and answer from the context in which it was made in order to conclude that the words permit more than one meaning. *Id.*. The context of the question may include both the questions which previewed the question at issue and any "qualifying colloquy which followed the question and answer in issue." *Id.*

Here, the context of the questions shows that the prosecutor had asked several questions concerning a certain house of prostitution in Malden and the manner in which the police department had dealt with it.[1] The prosecutor asked "Who was bankrolling the business?" Indictment at 24. Semon answered that no one was bankrolling the business. *Id.* The next question was, "Have you ever yourself taken money from anybody in connection with your police duties?" *Id.* The allegedly false answer was "Not a dime, Ma'am." *Id.* The prosecutor then asked, "Have you ever asked anybody for money in connection with your police duties?" *Id.* Semon replied, "No, Ma'am." *Id.* The prosecutor next asked "Do you have any information of any kind to the effect that any Malden police officer has ever accepted money from anyone in connection with his or her official police duties?" *Id.* The answer was, "No Ma'am, and that was my job to investigate that." *Id.* Finally, the prosecutor asked, "Have you ever heard, sir, that Mr. Butt has received money from prostitutes or from people associated with houses of prostitution, to protect those businesses?" *Id.* The answer again was, "No Ma'am." *Id.* at 25.[2]

Considering the context of the questions, the phrase "in connection with ... police duties" is not fundamentally ambiguous.

---

**1.** The government included in the indictment a copy of the questions which were asked prior to the alleged perjury.

**2.** Semon concedes that this final question is not ambiguous and therefore he does not request this Court to strike it.

The context of the questions show that the prosecutor led up to the allegedly ambiguous questions by asking about the prostitution ring in Malden and the way the police addressed such criminal activity. Immediately preceding the question of whether Semon himself had ever taken money, the prosecutor asked who was "bankrolling" the house. It is easily inferred that the prosecutor was averring to receiving money from the house of prostitution in her next question. Clearly, Semon knew that the prosecutor was referring to illegal receipt of money because he responded, "No Ma'am, and that was my job to investigate that." There was never a question concerning the collection of salaries or any other compensation from the police department. In addition, the prosecutor cleared up any possible ambiguity with her final question which specifically asked whether Semon knew whether Butt had accepted money to protect the house of prostitution. This question makes it clear that she was referring to whether Semon knew if police officers had been bought off. As stated in *United States v. Martellano*, 675 F.2d at 943, a colloquy occurring after the question at issue may be considered in determining whether the context of the question made the meaning clear. In this case the meaning of the question is clear enough to allow a jury to evaluate fairly whether Semon knew if his answer was false when he made the statement.

### B. Specificity of counts seven and eight of the indictment.

■ Semon argues that since the indictment does not name the victims or the specific dates, times, or places of the underlying conduct (the receipt of money "in connection with ... police duties"), it is fatally flawed and must be dismissed. Since knowledge of the falsity of the statement is an element of the charge of perjury, Semon argues that he cannot mount an effective defense unless the indictment sets forth the underlying facts proving that he had knowledge of the falsity of his statement. Semon argues that it is not adequate for the indictment merely to state facts concerning the alleged act of perjury

itself, i.e., the date and time of the allegedly perjured testimony. The government argues that they did not need to include a "truth paragraph" at all, let alone a specific one alleging the details of the underlying truth.

■ At a minimum, the Sixth Amendment to the United States Constitution requires that an indictment contain all of the information and facts needed to inform a defendant of the nature of the crime and allow him or her an opportunity to prepare a defense to the allegations. *United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir.1970). In *Tomasetta*, the First Circuit held an indictment for extortion to be inadequate because it failed to state: (1) the means of communicating the threats, (2) the alleged victim of the crime, and (3) the location of the alleged offense. *Id.* at 980–81. Generally, however, courts will uphold an indictment which "track[s] the language of the statute and, in addition, do[es] little more than state the time and place in approximate terms." *United States v. Bernstein*, 533 F.2d 775, 786 (2nd Cir.1976). The issue in this case focuses on whether an indictment for *perjury* must include the facts of the underlying truth, i.e., the facts of the alleged extortion.

In *United States v. Slawik*, 548 F.2d 75 (3rd Cir.1977), the Third Circuit held that a perjury indictment must "set forth the precise falsehood alleged and the factual basis of its falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of those falsehoods." *Id.* at 83. More recently, a number of courts have disavowed this rule, stating that a "truth paragraph" is no longer required in an indictment for perjury. *United States v. Portac, Inc.*, 869 F.2d 1288, 1295–96 (9th Cir.1989); *United States v. DeCoito*, 764 F.2d 690, 693 (9th Cir.1985); *United States v. Serola*, 767 F.2d 364, 370 (7th Cir.1985); *United States v. Oberski*, 734 F.2d 1034, 1035 (5th Cir.1984), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 797, 83 L.Ed.2d 790 (1985); *United States v. Crippen*, 579 F.2d 340, 341 (5th Cir.1978), *cert. denied* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); *United States v. Gregory*, 611 F.Supp.

1033, 1039 (S.D.N.Y.1985).[3] Although these cases hold that a "truth paragraph" is no longer needed in every indictment for perjury, they have also stated that an indictment must set forth the nature of the charges against the defendant. In addition, some of these cases have qualified their rejection of a "truth paragraph" by requiring that if the allegedly perjurious questions are ambiguous, "the indictment should set out both the alleged falsehood and the objective truth so that the accused may adequately form his defense." *United States v. Bertman*, 575 F.Supp. 780, 781–82 (D.Haw.1983); *see also United States v. Decoito*, 764 F.2d at 693 (Although a "truth paragraph" is not needed in every perjury indictment, "[c]ases may arise in which, without an allegation of truth, the indictment will not be sufficient."). Other cases discard the need for a "truth paragraph," reasoning that because the "indictment allege[s] that [the] answers were false; the opposite truth is apparent without the need for a particular averment." *Portac*, 869 F.2d at 1296. For example, in *Serola*, 767 F.2d at 370, the Seventh Circuit stated that a "truth paragraph" is not required "when an indictment ... contains [such] clear, direct, unambiguous and precise questions and answers that the nature and extent of the alleged falsity is fairly self-evident...." *Id.*

In this case, the indictment includes the facts of the testimony itself, including the time and place of the grand jury testimony, a brief portion of the grand jury testimony surrounding the alleged perjury, and a "truth paragraph." The "truth paragraph" does not set out the exact dates of the "truth," but rather alleges that Semon had knowledge that he and Butt had received money illegally "from approximately January, 1984 to at least December, 1987." Indictment at 20, 25. In addition, the testimony prior to the alleged perjury identified the location of the houses of prostitution at issue and the "stage" names of some of the persons involved in the alleged payment of money to the police officers.[4] Since this Court has held that these questions are not fundamentally ambiguous when considered in light of the context of the rest of the grand jury testimony, the cases cited from other circuits suggest that a "truth paragraph" may not be necessary. The indictment in this case, moreover, meets the stricter standard required in *Slawik* because sufficient facts have been alleged in the "truth paragraph" and the surrounding testimony to set forth "the factual basis of [the] falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of those falsehoods." *Slawik*, 548 F.2d at 83. In *Serola*, the court required that the "nature and extent of the alleged falsity [be] fairly self-evident." *Serola* at 371. That is the case here. The indictment, therefore, is sufficient and the motion to dismiss is denied.[5]

---

3. During oral argument defense counsel argued that the First Circuit has adopted a rule requiring a "truth paragraph" in an indictment for perjury, citing *United States v. Finucan,* 708 F.2d 838, 846–48 (1st Cir.1983). This Court does not read that case to impose any such requirement. In *Finucan,* the First Circuit upheld the dismissal of an indictment by the district court. While the indictment in that case did contain a "truth paragraph," the inquiry of the defendant there did not concern such "truth." In *Finucan,* the defendant was charged with lying about her knowledge concerning ownership of an object— and this was alleged in the "truth paragraph"— but in fact she had only been asked questions pertaining to her knowledge of the use of that object. *Id.* at 846. *Finucan* thus should be interpreted as requiring no more than that, if an indictment includes a "truth paragraph," it must directly pertain to the charges against the defendant. In *Finucan,* even if the government had been successful in proving the truth of the "truth paragraph," the defendant would not have been guilty of perjury.

4. In his answers to the prosecutor's questions, Semon himself named "Marie" and "Nicole" as two of the women running the houses of prostitution.

5. Semon also argues that the indictment must be dismissed because the "truth paragraph" fails to track the question asked. *Finucan,* 708 F.2d at 846–48. *See also United States v. Cowley,* 720 F.2d 1037, 1042 (9th Cir.1983) ("the indictment must set out the allegedly perjurious statement and the objective truth in stark contrast so that the claim of falsity is clear to all who read the charge."). This argument must fail because the simple linguistic difference between the questions and the "truth paragraph" does not alter the claim of falsity in any material way. Al-

## II. Joinder and Severance.

Semon complains that it is improper to join his trial with that of Butt and that, even if joinder is technically permissible in the legal sense, this Court ought, as matter of discretion, sever his trial from that of Butt. The Court deals with these issues in turn.

### A. Joinder.

Federal Rule of Criminal Procedure 8(b) provides:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

As stated by the First Circuit in *United States v. Turkette*, 632 F.2d 896, 907 (1st Cir.1980), *rev'd on other grounds*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1984), some "relatedness" between counts must be alleged for a proper joinder of defendants. Relatedness can be established by "demonstrating that essentially the same facts must be shown for each of the consolidated crimes." *Id.* at 908. The relatedness of the counts " 'should explicitly appear from the indictment or from other representations by the government before trial.' " *Id.* (quoting *King v. United States*, 355 F.2d 700, 703 [1st Cir.1966] ); *United States v. Martinez*, 479 F.2d 824, 828 (1st Cir.1973) (Court looked to indictment and bill of particulars in determining the relatedness of the counts).[6]

In *United States v. O'Connell*, 703 F.2d 645, 648–49 (1st Cir.1983), the First Circuit upheld a joinder of counts similar to the counts at issue in this case. In *O'Connell*, the court held that an indictment charging one defendant with perjury, conspiracy to steal goods and stealing goods could be joined with an indictment charging another defendant with conspiracy to steal goods and stealing goods, where the facts necessary to show guilt on the charge of stealing goods were a subset of the facts necessary to show perjury. *Id.* In *United States v. Luna*, 585 F.2d 1, 4 (1st Cir.1978), the First Circuit stated that a "conspiracy count can be a sufficient connecting link between co-defendants and separate substantive offenses to permit their joinder in a single indictment." *Id.* (citations omitted). The court added that if the conspiracy count is included in the indictment in good faith and has a factual basis, joinder is permissible. *Id.*

In this case, the indictment includes eight counts. Counts 1 and 3 allege Hobbs Act Conspiracy, 18 U.S.C. sec. 1951, in which Butt and "other persons known and unknown to the Grand Jury" conspired to obtain money unlawfully from certain prostitutes in Malden. Counts 2 and 4 allege that Butt violated the Hobbs Act. Count 5 alleges that Butt and "persons known and unknown to the Grand Jury" conspired to conduct a pattern of racketeering. Count 6 alleges that Butt "and other persons known and unknown to the Grand Jury" did participate in a pattern of racketeering. Finally, counts 7 and 8 allege that Semon committed perjury in his grand jury testimony, thereby violating 18 U.S.C. sec. 1623. Richard Egan, a special agent of the FBI, has submitted an affidavit which states that the Grand Jury is still investi-

---

though there is a difference between taking money and receiving it, it is the jury's duty to determine whether Semon knew what the prosecutor was asking and whether he knowingly answered falsely. *See United States v. Picketts*, 655 F.2d 837 (7th Cir.1981).

**6.** At the hearing, defense counsel asserted that in *United States v. Boylan*, 898 F.2d 230, 245 (1st Cir.1990), the First Circuit required that the common series of acts or transactions necessary for joinder be obvious from the face of the

indictment. The statement of the *Boylan* court is, however, merely dicta because the indictment in that case did contain the common series of acts. This Court concludes that *Boylan* does not contradict the holdings in *United States v. Turkette*, 632 F.2d 896, 908 (1st Cir.1980), or *United States v. Martinez*, 479 F.2d 824, 828 (1st Cir.1973), which allow the relatedness to be found in the indictment or other representations prior to trial.

gating the unknown co-conspirators. The government has informed the defendants in its bill of particulars that Semon is one of the known but unnamed individuals involved in counts 1, 3, 5 and 6.

In this case, the alleged crimes in the indictment are related. The evidence admissible to prove the alleged conspiracies between Semon and Butt in counts 1, 3 and 5 will also tend to prove Semon's knowledge of the events about which he allegedly lied to the Grand Jury. In order to prove Semon's knowledge of the truth—an element of the perjury charge—proof may be elicited that he participated in a conspiracy to commit the extortionate conduct. Here, as in *Luna*, where the counts appear to be included in the indictment in good faith and with a factual basis, they provide "a sufficient connecting link between co-defendants and [their] separate substantive offenses to permit their joinder in a single indictment." *Luna*, 585 F.2d at 4.

Semon argues that because he has not been charged with the other crimes in the indictment, joinder is not permissible. The only substantive difference between this case and *O'Connell*, 703 F.2d at 645, where the First Circuit permitted joinder of perjury, conspiracy and theft, is that in this case Semon is an unindicted co-conspirator rather than a codefendant. As the First Circuit held in *Martinez*, 479 F.2d at 828, the relatedness of counts may be identified in a bill of particulars which elaborates on the indictment. In addition, Rule 8(b) states that all defendants need not be *charged* with each count in order to join charges, as long as the defendants "are alleged to have participated in the same act or transaction." Fed.R.Crim.P. 8(b).

In this case, Semon was granted immunity and therefore he cannot be charged as a defendant in the underlying activity. The indictment states that Butt conspired with other persons "known and unknown" to the Grand Jury. The bill of particulars submitted by the government states that Semon is the unidentified co-conspirator referred to in the indictment. Semon argues that the affidavit submitted by Richard J. Egan contradicts the bill of particulars be-

cause, while the affidavit states that the Grand Jury is still investigating the unknown and unnamed co-conspirators, the bill of particulars states that Semon is a known, unnamed co-conspirator. The government concedes that Semon was never an "unknown and unnamed" co-conspirator; rather, the government states that Semon was a *known* but unnamed co-conspirator. As the indictment states that there are "known and unknown" co-conspirators, the government's explanation of Egan's affidavit is satisfactory. Thus, given the information in the indictment and the bill of particulars, including the coinciding "stage" names of the prostitutes and the dates of the incidents as well as the identification of Semon as one of the unnamed co-conspirators, this Court holds that joinder is proper under Rule 8(b). Butt and Semon may legally be joined for trial because they have allegedly participated in the same act or in the same series of acts, even though Semon is not named as a defendant in the underlying conspiracy charged.

#### B. Severance.

██ Federal Rule of Criminal Procedure 14 states:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

In determining whether to exercise discretion to grant a severance, courts in this circuit have asked whether juries will be able to "compartmentalize" the evidence and consider it for the purposes for which it is admitted. *United States v. Abrahams*, 466 F.Supp. 552, 556 (D.Mass.1978) (quoting *United States v. Dansker*, 537 F.2d 40, 62 [3d Cir.1976]). In addition, courts have attempted to balance the benefits to the public, the government, and the judicial system against the possibility of prejudice toward the defendant. *Id.* at 555. Generally, a defendant "must make a

'strong showing of prejudice' likely to result from a joint trial" in order to persuade a court to allow a discretionary severance. *Luna*, 585 F.2d at 4 (quoting *Sagansky v. United States*, 358 F.2d 195, 199 [1st Cir. 1966]). Courts have considered many issues in deciding whether to grant a discretionary severance, including whether: (1) the separate counts are clear and distinct, thereby preventing confusion or overlap, *id.* at 5; (2) the defendants assert inconsistent defenses, *id.;* (3) the defendants have irreconcilable theories of the case, i.e., must the jury find one defendant guilty at the expense of the other?, *Abrahams*, 466 F.Supp. at 555; (4) the defendants informed the court of the specific evidence that may be offered which would be unduly prejudicial to one defendant, *id.* at 556; (5) the defendants informed the court of specific exculpatory evidence which may be available if the defendants are tried separately, *id.* The mere likelihood that the government will introduce evidence that is prejudicial against one defendant has been held insufficient to grant a severance because the potential prejudice is sufficiently limited by rules of exclusion. *Id.* at 556. In addition, alleged conviction by association will be insufficient to justify severance. *Id.* It is clear that the alleged prejudice must be more than vague conjecture; "[s]peculation is not a grounds for severance." *Id.; United States v. Thomann*, 609 F.2d 560, 565 (1st Cir.1979).

In the case at hand, Semon has not informed this Court of any specific prejudice which is likely to result if the trial is not severed. Nor has he informed the Court of his defense or theory of the case. Thus, it is difficult for this Court to conjure up a theory of the case in which one defendant will be in a position to inculpate the other in order to exculpate himself. Semon has not informed this Court that exculpatory evidence will become available if the trial is severed. The only element of prejudice that Semon has argued in his brief is that some of the evidence offered by the government against Butt will be inadmissible against Semon. It is likely, however, that much of the evidence will be admissible against both defendants since they are allegedly co-conspirators. Moreover, the Court has ordered that the evidence of Semon's perjury, admissible only as to him, be presented together at the end of the case. In this fashion, and by using limiting instructions, Semon's rights will be adequately protected. The indictment presents clear, distinct charges against Butt and Semon which the jury should be able to "compartmentalize" while considering the evidence as it pertains to the relevant charges. Semon has not met his burden in proving a "strong showing of prejudice" which would outweigh the benefit to the public, the government, and the judicial system in joining these counts and therefore this Court denies Semon's motion to sever.

III. Discovery.

A. Bill of Particulars.

While the government has filed a bill of particulars in this case and the Magistrate found it adequate, Semon here seeks review of that determination. After hearing, this Court modifies the order of the Magistrate to require that the names and addresses of the victims of the alleged extortion be given to the defense counsel twenty days prior to the September 24, 1990 trial date in order to allow the preparation of an adequate defense. This order does not in any respect alter or amend the bail conditions imposed by the Magistrate.

B. Protective order.

The Magistrate granted a protective order against disclosure of certain tape recordings that allegedly contain conversations among Butt, Semon, and an individual identified as a prospective government witness. Semon seeks review of that determination. Upon a careful review of the entire record, the decision of the Magistrate is affirmed in all respects.

SO ORDERED.